DAVID L. SNOWDEN AND CHARLES SNOWDEN, APPELLEES, v. ELLA M. TYLER, ET ALS., IMP., ETC., APPELLANTS.

1. **Real Estate**: TITLE: EJECTMENT. The remedy for the recovery of real estate by one claiming the legal title thereto against one in possession claiming an estate therein, is an action of ejectment in which the facts may be submitted to a jury; and an action to quiet title, if properly objected to, will not lie.

2. ———: ACTION QUIA TIMET: JURISDICTION. Where a party out of possession of real estate brings an action to quiet title, and the defendant answers, alleging a cloud upon his title, caused by the plaintiff's deed, and prays for a decree cancelling the same, the court will have jurisdiction to determine the title of the respective parties. A defect which appears on the face of the petition should be taken advantage of by demurrer.

3. ———: QUIT-CLAIM DEED: RIGHTS OF BONA FIDE PURCHASER. A quit-claim deed of real estate, while affording cause of suspicion may, where it appears in a chain of title on the proper records of the county, be sufficient to justify a *bona fide* purchaser for a valuable consideration in relying upon it as a valid conveyance. It is a *bona fide* purchaser for valuable consideration, and not a donee, who is protected.

4. ———: ———: CASE STATED. One Shirk, in 1862, conveyed certain real estate to one Snowden, who failed to record his deed. In 1866, Snowden died, and in 1870 one Poe sought to purchase the land of Shirk, but was informed that it had been sold and conveyed to Snowden. Poe then applied to the adult heirs and administrator of the estate of Snowden, and the guardian of the minor heirs, and was informed that the deed in question had been lost or destroyed. Poe thereupon purchased the land,

taking deeds from the adult heirs, and with their consent, a quit-claim deed from Shirk, which last deed he placed on record; *Held*, That a *bona fide* purchaser for a valuable consideration from a grantee of Poe took the title as against an heir, who was a minor at the time the deed from Shirk was obtained; but that a mere donee from Poe was not so entitled.

5. ———: ADVERSE OCCUPANCY: REDEMPTION BY HEIRS. Where heirs come into a court of equity to claim an interest in lands, which has not been conveyed, but which lands have been held adversely by other parties for a long period, they must do equity by paying a just proportion of the taxes and the interest due thereon.

6. ———: PURCHASER PENDENTE LITE. A purchaser *pendente lite* from a purchaser who bought without notice, and for a valuable consideration, may protect himself under the first purchaser.

APPEAL from the district court of Otoe county. Heard below before MITCHELL, J.

*Edwin F. Warren*, for appellant.

1. A quit-claim deed acts as an estoppel. *Franklin v. Kelley*, 2 Neb., 111. The holder of title under a quit-claim is protected by statute. *Morris v. Daniels*, 35 O. St., 406, 420. A quit-claim deed in a chain of title does not deprive him who claims under it of the character of a *bona fida* purchaser.. *Chapman v. Sims*, 53 Miss., 154. *Brown v. Banner Coal Co.*, 97 Ill., 215. *McConnel v. Reed*, 4 Scam., 117. *Morgan v. Clayton*, 61 Ill., 40. *Bradbury v. Davis*, 5 Col., 265. *Fox v. Hall*, 74 Mo., 315. *Willingham v. Hardin*, 75 Mo., 429; Id., 383. *Springer v. Bartle*, 54 Ia., 476.

2. A purchaser *pendente lite*, from one who was himself a purchaser *bona fide*, or even a fraudulent grantee from such a holder, is protected. A purchaser with knowledge of equities who buys from one who was an innocent purchaser for value holds the estate free as his grantor did. *Westbrook v. Gleason*, 79 N. Y., 31. *Varrick v. Briggs*, 6

Paige, 323.   *Foot v. Burch,* 5 Denio; 187.   *Wood v. Chapin,* 13 N. Y., 509.   *Collins v. Heath,* 34 Ga., 443. *Choutcau v. Jones,* 11 Ill., 300.   *Erskine v. Decker,* 39 Me., 467.   *Fasset v. Smith,* 23 N. Y., 252.   *Dexter v. Harris,* 2 Mass., 531.   *Crocker v. Bellange,* 6 Wis., 645.   *Lowther v. Carleton,* 2 Atk., 242.

3.  Innocent purchasers from fraudulent grantees will be protected.   *Colquit v. Thomas,* 8 Ga., 258.   *Grimstone v. Carter,* 3 Paige, 421.   *Scarlett v. Graham,* 28 Ill., 319. *Snyder v. Roberts,* 13 Tex., 598.   *Erskine v. Decker,* 39 Me., 467.   *Miller v. Fraley,* 23 Ark., 735.   *Lea v. Polk Co.,* 21 How. (U. S.), 493.   *Brown v. Budd,* 2 Ind., 442. *Godfrey v. Disbrow,* Walker (Mich.), 270.   *Holmes v. Stout,* 4 N. J. Eq., 492.   *Bumpus v. Platner,* 1 John. Ch., 213. *Garavyn v. Bryant,* 83 Ill., 376; 84 Id., 451; 85 Id., 597.   *Corbin v. Sullivan,* 47 Ind., 356.   *Stout v. Hyatt,* 13 Kan., 232.

4.  Title resting on priority of record of a second deed will prevail against title through a prior unrecorded deed from the same original grantor if any one of the mesne purchasers through whom the former title comes purchased in good faith and for a valuable consideration, without notice of said prior unrecorded deed.   *Shotwell v. Harrison,* 22 Mich., 410.   *Godfrey v. Disbrow,* 2 Walker Ch., 260. *Pringle v. Dunn,* 37 Wis., 443.   *Coffin v. Ray,* 1 Met., 212.   *Glidden v. Hurst,* 24 Pick., 221.   *Boynton v. Rees,* 8 Pick., 329.   And the subsequent recording of a prior deed will not affect purchasers under the prior title.   *Somes v. Brewer,* 2 Pick., 184.   *Trull v. Bigelow,* 16 Mass., 406. *Hardin v. Harrington,* 11 Bush. (Ky.), 367, and authorities *supra.*

5.  For further authorities upon the subject of notice, see: *Low v. Blinco,* 10 Bush (Ky.), 331.   *Losey v. Simpson,* 11 N. J. Eq., 246.   *Long v. Dollarhide,* 24 Cal., 218. *Chicago v. Witt,* 75 Ill., 211; Id., 354.   *Ritzer v. Rankin,* 77 Ill., 289.   *Houston v. Stombumer,* 92 Ill., 75; 32 Id.,

529.    *Mayhem v. Crombs*, 14 O. St., 428.    *Ogle v. Turpin*, 102 Ill., 152.

*S. H. Calhoun*, for appellees.

MAXWELL, CH. J.

The plaintiffs brought an action against the defendants in the district court of Otoe county, and alleged in their petition—

"That in January, 1867, one Elijah Snowden—the father of the said plaintiffs—died at his residence in Indiana, a widower, and seized of the following described real estate situate in Otoe county, Nebraska, to-wit: Section twenty-three (23) township seven (7) range eleven (11) E., containing 640 acres.

"That said Elijah Snowden, at his death, left the following children: Adaline, now the wife of Samuel J. Leedy; Catharine, now the wife of Sylvester Snodgrass; Margaret, now the wife of James S. Ford; Sally, now the wife of Joseph Leedy; William T. Snowden, and the plaintiffs. That the above-named were all his children surviving him, and were and are his heirs at law. That the said Elijah Snowden derived his title to said real estate from one Elbert H. Shirk, by warranty deed, dated July 25, 1862. That said Shirk derived his title from one Barrett Blue, by warranty deed, dated December 11, 1860; that said Blue derived his title thereto from the United States under an entry made June 21, 1860, and a patent dated October 9, 1860.

"That said Elijah Snowden left no other estate in Nebraska; that all the balance was exhausted in the payment of his debts and expenses of settling his estate; that it was long doubtful whether or not said described lands in Nebraska would also have to be sold in order to pay his debts, but the same were finally settled out of his other property.

This estate was fully settled in the proper tribunals in the state of Indiana, in March, 1882.

"That the above-named children of said Elijah inherited said land. as his sole surviving heirs at law, became joint tenants thereof; that since said joint tenancy begun said Sallie Leedy has conveyed all her interest therein to her brother David L. Snowden, who now holds and owns two-sevenths thereof; that Adaline Leedy, Catharine Snodgrass, Margaret Ford, and their respective husbands, and William T. Snowden, have each declined to become plaintiffs, and are therefore made defendants.

"That Ella M. Tyler, formerly Ella M. Poe, and C. L. Tyler, her husband, and E. E. Lyle, and Joseph Mastalka and Herman Floerke, and Connoy Hanks, have set up a claim or claims to said tract of land, and pretended to be owners thereof; that said pretended claim or claims are based upon a pretended quit-claim deed from said Elbert H. Shirk to one Adam Poe; that said quit-claim deed conveyed no right in and to said tract of land, nor to any one claiming by, through or under him, as do the defendants; that said pretended quit-claim deed was of a date long subsequent to the warranty deed from said Shirk to said Elijah Snowden, and that the same was and is a gross fraud upon the rights of said heirs at law in and to said land, and is a cloud upon the title of said heirs in and to the same; that the said defendants pretend to have made some division among themselves of their grantors of said tract of land, and to hold separate and distinct tracts based upon said pretended quit-claim deed from Shirk to Poe, and that by reason thereof the real owners of said land are and will be unable to obtain for said land, or for any portion or portions thereof, the full market value therefor, and will be inconvenienced and hindered in the exercise of their legal rights thereto.

"Wherefore said plaintiffs pray that the said pretended quit-claim deed from Shirk to Adam Poe, and all subse-

quent deeds from said Poe or any of his grantees, either remote or immediate, may be declared to be a cloud or clouds upon the title of the heirs of said Elijah Snowden deceased; that the same may be set aside .and held for naught, and the said defendants Tyler, Lyle, Mastalka, Floerke, and Hanks, may be declared to have held said property as the trustees of, and for the said heirs of Elijah Snowden, deceased; that an accounting may be had, and that the proper parties may be put into the undisturbed and uninterrupted possession and sole control of the same, and for general relief in equity."

### ANSWER OF CONNOY HANKS.

" Answer filed in said court October 11, 1884.

"1.   Denies each and every allegation not expressly admitted hereinafter.

"2.   Alleges that he is the owner in fee simple, and in the open, notorious, and undisturbed possession of the north-east quarter of section 23, town 7, range 11 east, in said county, being a portion of the same premises described in amended petition; that his said title thereto is derived through and from one Elbert H. Shirk mentioned in the petition, and is adverse, hostile, and independent of and paramount to the pretended title of the said plaintiffs and those under whom they claim, as set out in the petition; that this defendant, and those under whom he claims, have been in the quiet and peaceable possession of said above-described quarter section of land since September 19, 1870, claiming to own the same adversely to all the world by paramount title; that under their said title defendant and those under whom he claims have owned, occupied, and enjoyed the same and every part thereof for more than ten years next preceding the commencement of this action, wherefore the defendant pleads.the bar of the statute of limitation.

"3.   Alleges further that one Lefford H. Purcell was his

grantor, by deed dated December 23, 1882, said deed filed for record in said Otoe county, January 6th, 1883; that defendant paid said Purcell therefor $700 cash, and entered into possession; that at the date of said purchase defendant was entirely ignorant of any claims or demands of said plaintiffs in or to said quarter section; that said Purcell purchased the same October 25, 1881, of one Charles F. Weibke for the sum of $1,500; that said Weibke purchased the same of one George L. Bittinger, June 21, 1875, for $1,600; that said Bittinger purchased the same, including other lands, of one G. Z. Rayhouser, July 14, 187.., for the sum of $2,600; that said Rayhouser purchased the same including other lands, August 4, 1873, of L. F. D'Gette and E. F. Warren, for $2,800; that said D'Gette and said Warren purchased the same from Adam W. Poe, December 1, 1870, for $500; that each of the several deeds aforementioned were recorded in the office of clerk of Otoe county immediately after the execution and delivery. That said several owners, to-wit, Purcell, Weibke, Bittinger, and Rayhouser, were each an innocent purchaser of said premises for value without any knowledge or information of any claim or interest therein on the part of said plaintiffs or anybody else adverse to them. Wherefore defendant pleads and insists that he and his grantors were and are *bona fide* purchasers for value without knowledge or information of the alleged claims of the said plaintiffs, and he is entitled to protection therein as innocent purchaser; that said Poe, claimed to be, and was a purchaser of said lands for value from said Shirk, by deed dated Sept. 19, 1870, recorded in Otoe county clerk's office Sept. 23, 1870. That the alleged deed from said Shirk to said Elijah Snowden, mentioned in the petition as executed July 25, 1862, was not filed for record in said clerk's office before July 14, 1879; that neither defendant nor either of his grantors since said Poe had any knowledge, information or suspicion of said alleged deed from Shirk to Snowden, until a time

after it had been recorded as aforesaid in 1879; that defendant was advised by counsel learned in the law that the legal title to said land was vested in his grantor, the said Purcell, and that he could safely purchase the same notwithstanding said deed from Shirk to Snowden, wherefore said last mentioned deed is wholly void and of no effect as against this defendant's title therein.

"4. Alleges on information and belief, that in 1870, one Adam W. Poe, one of the grantors in the chain of title, desired to purchase the whole of section 23, township 7, range 11, aforesaid—which includes defendant's land—of one Elbert H. Shirk, the then apparent owner thereof as shown by records of Otoe county; that said Shirk informed Poe that he had previously sold same to Elijah Snowden then deceased; that thereupon the said Poe and the heirs of said Snowden, including the plaintiffs, agreed upon the purchase price of said section of land, to-wit, $2,000, and the delinquent taxes thereon, which said sum of $2,000 Poe then and there paid to said heirs, including plaintiffs, or to their agent by their direction, said sum being full market value of said land at that time. That thereupon it was agreed between said Poe and said heirs, including the plaintiffs, that in consideration of said sum said Shirk should execute and deliver to said Poe a quitclaim deed to said lands for the expressed consideration of one dollar, the supposed or alleged deed from said Shirk to said Snowden having been, as was said, lost or destroyed, and never recorded. That the same was accordingly done; that thereupon the said heirs of said Snowden, including the said plaintiffs, executed and delivered to said Poe a deed or deeds for their supposed interest in said lands, which said deed also was never recorded. That said $2,000 was paid and deeds executed about September 19, 1870. That said Poe, for value received, conveyed certain portions of said section to said D'Gette and said Warren as aforesaid. That none of the facts stated in this paragraph

were known to this defendant or to either of his grantors subsequent to said D'Gette and said Warren, but that he and they and each of them were purchasers in good faith for value without knowledge of any facts or statements that the said plaintiffs or any of the heirs of said Snowden, or any one else, had or claimed any interest in said lands.

"5. Alleges that at the date of the purchase of said lands by said Poe, they were incumbered by taxes delinquent and unpaid, and had been sold therefor on Sept. 7, 1868; that said Poe, the said D'Gette and Warren, and other successive owners as herein before mentioned, have paid to redeem said described quarter section—the N. E. ¼ Sec. 23, 7, 11, and for subsequent taxes assessed thereon, the sums at the dates following, to-wit:

| | | | | | |
|---|---|---|---|---|---|
| Oct. | 8, 1870 | paid to redeem | | $101 | 62 |
| Oct. | 8, 1870 | " | tax of 1868 | 17 | 19 |
| June | 30, 1870 | " | " 1869 | 22 | 69 |
| April | 19, 1871 | " | " 1870 | 34 | 80 |
| April | 26, 1872 | " | " 1871 | 36 | 12 |
| Aug. | 5, 1873 | " | " 1872 | 33 | 59 |
| Oct. | 23, 1874 | " . | " 1873 | 31 | 06 |
| March | 27, 1875 | " | " 1874 | 22 | 40 |
| June | 19, 1876 | " | " 1875 | · 25 | 22 |
| Oct. | 22, 1877 | " | " 1876 | 29 | 13 |
| Nov. | 1, 1878 | " | " 1877 | 22 | 07 |
| Feb. | 14, 1880 | " | " 1878 | 21 | 16 |
| Oct. | 29, 1880 | " | " 1879 | 22 | 53 |
| April | 29, 1882 | " | " 1880 | 26 | 31 |
| April | 29, 1882 | " | " 1881 | 20 | 14 |
| July | 21, 1883 | " | " 1882 | 23 | 59 |
| May | 20, 1884 | " | " 1883 | 21 | 43 |
| | Tax of 1884, due and unpaid | | | 31 | 37 |

Aggregating the sum of                 $542 42

besides interest on the several sums from the dates of their respective payments.

" 6.    Alleges that by reason of the premises the alleged deed from Shirk to Snowden, dated July 25, 1862, and recorded July 14, 1879, on book 6 of deeds, page 617 in the records of Otoe county, is a cloud on the title of defendant in and to said quarter section, impairs its market value and the sale thereof, and ought not to be allowed to remain thereon.

" 7.    This defendant protests against the jurisdiction of the court to try the question of his title to said lands or his right to the possession thereof in this form of action ; protests against being compelled to defend his said title in common with others and other lands in which he has not the least interest, claim, or demand, and no privity either in law or equity.

" Wherefore the defendant, Hanks, demands judgment that said action be dismissed ; that a decree may be entered quieting his title in and to said described quarter section against the claims and demands of the plaintiffs, and against the claims of the defendants, Adaline Leedy and husband, Catharine Snodgrass and husband, Margaret Ford and husband, and William T. Snowden, and all persons claiming under them by virtue of said deed from Shirk to Snowden, and for general relief."

The separate answer of said Lyle is the same as that of the said Hanks, except as follows :

" Defendant Lyle claims to be the owner in fee simple and in possession of the south-east quarter of said section 23, T. 7, R. 113 E., and derives his title as follows : '

" From John J. Burke by special warranty deed dated June 18, 1883, filed for record July 2, 1883, paying therefor $677.50 cash, and took possession. That said Burke purchased the same of L. F. D'Gette and E. F. Warren for $960 cash, September 24, 1880 ; that said Burke received a warranty deed from his grantors, which was filed for record October 10, 1870 ; that Burke was an innocent purchaser without any knowledge of plaintiff's claims ;

that D'Gette and Warren claimed to be the owners by deed dated Dec. 1, 1870, from Poe; that Poe derived title from Shirk by deed dated Sept. 19, 1870, which deeds were filed for record immediately."

Also an itemized statement of taxes paid to the year 1884, amounting in the aggregate to $489.79 and interest on the several amounts from the dates of their respective payments.

ANSWER OF JOSEPH MASTALKA,

Filed October 24, 1884.

Same answer as Hanks and Lyle except in chain of title and amount paid for taxes upon forty acres claimed to belong to him, to-wit: The north-west quarter of the south-west quarter of said section 23, Tp. 7, R. 11 E.

His chain of title is as follows:

"1. Quit-claim deed from Elbert H. Shirk to Adam W. Poe, dated Sept. 19, 1870, recorded Sept. 23, 1870.

"2. Adam W. Poe and wife to L. F. D'Gette and E. F. Warren, Sept. 6, 1870, deed of bargain and sale, recorded Sept. 23, 1870.

"3. Another deed from Poe to same grantors, dated Dec. 1, 1870, recorded Jan. 26, 1871.

"4. Warranty deed from D'Gette and wife and Warren and wife to Ella M. Poe, dated May 23, 1873, recorded same day.

"5. Ella M. Poe (single) by warranty deed to defendant Mastalka, dated May 25, 1876, recorded Aug. 9, 1876."

With itemized statement of taxes paid to the year 1884 amounting in the aggregate to $149.44 and interest on the several amounts from the dates of their respective payments.

ANSWER OF ELLA M. TYLER AND HUSBAND,

Filed Oct. 24, 1883.

Same answer as those of Hanks, Lyle, and Mastalka except in chain of title and amount paid for taxes upon land claimed to belong to her, to-wit: The east half and

14

the south-west quarter of the south-west quarter; and the south-west quarter of the north-west quarter of said section 23, T. 7, R. 11 E., being 160 acres.

Chain of title:

"1. Elbert H. Shirk and wife to Adam Poe, quit-claim deed, dated Sept. 19, 1870.

"2. Adam W. Poe and wife to L. F. D'Gette and E. F. Warren, deed, bargain and sale, Sept. 6, 1870.

"3. Adam W. Poe and wife to L. F. D'Gette and E. F. Warren, quit-claim deed, Dec. 1, 1870.

"4. L. F. D'Gette and E. F. Warren and wives to Ella M. Poe (now Ella M. Tyler), May 23, 1883."

And itemized statement of taxes paid to the year 1884, amounting in the aggregate to $507.52, with interest on the several amounts from the dates of their respective payments.

ANSWER OF HERMAN FLOERKE,

Filed in said cause Nov. 18, 1884.

Same answer as those of Hanks, Lyle, Mastalka, and Tyler, except in chain of title and amount paid for taxes on land claimed to belong to him, to-wit: The north half and the south-east quarter of the north-east quarter of said section 23, T. 7, R. 11 E., being 120 acres.

"1. Elbert H. Shirk and wife to Adam W. Poe, Sept. 19, 1870, quit-claim deed.

"2. Adam W. Poe and wife to L. F. D'Gette and E. F. Warren, deed, bargain and sale, Sept. 6, 1870.

"3. Adam W. Poe and wife to L. F. D'Gette and E. F. Warren, quit-claim deed, Dec. 1, 1870.

"4. L. F. D'Gette and E. F. Warren and wives, warranty deed to G. J. Z. Rayhouser.

"5. G. J. Z. Rayhouser and wife to G. L. Bittinger, warranty deed, July 14, 1875.

"6. Geo. L. Bittinger and wife to Harriet J. Hall warranty deed, July 14, 1875.

"7.    Harriet  J.  Hall  and  husband,  warranty  deed,
March 11, 1880, to Herman Floerke."

Also alleges that he and his grantors paid for taxes the sum
of $500, besides interest from date of payment respectively.

On the trial of the cause the court rendered a decree as
follows:

"In this cause    *    *    *    the court finds that the
prayer of the petition should be granted as to the defend-
ants Ella M. Tyler and C. L. Tyler, her husband, and
Epaminondas E. Lyle, and that the same should be denied
as to the defendants Joseph Mastalka, Herman Floerke,
and Connoy Hanks; that as against the defendants Ella
M. and C. L. Tyler, that the said plaintiff David L.
Snowden is entitled to two-sevenths; and the plaintiff
Charles Snowden is entitled to one-seventh of the SW. $\frac{1}{4}$
of the NW. $\frac{1}{4}$; also the E. $\frac{1}{2}$ of the SW. $\frac{1}{4}$, and the SW. $\frac{1}{4}$
of the SW. $\frac{1}{4}$ in section 23, T. 7, R. 11 E., in Otoe county,
Nebraska.    The court further finds as against the defend-
ant E. E. Lyle that the said plaintiff David L. Snowden
is entitled to two-sevenths, and the said plaintiff Charles
Snowden to one-seventh of the SE. $\frac{1}{4}$ of said section (23)
twenty-three.

" Further finds as against the said plaintiffs that the de-
fendant Connoy Hanks is entitled to the NE. $\frac{1}{4}$ of said
section twenty-three (23).

"Further finds as against the said plaintiffs, that the de-
fendant Herman Floerke is entitled to the E. $\frac{1}{2}$ of the
NW. $\frac{1}{4}$, and the NW. $\frac{1}{4}$ of the NW. $\frac{1}{4}$ of said section
twenty-three (23).

" Further finds as against the said plaintiffs, the defend-
ant Joseph Mastalka is entitled to the NW. $\frac{1}{4}$ of the SW.
$\frac{1}{4}$ of said section twenty-three.

" Further finds that Sarah Leedy has assigned her inter-
est in the said section to the said David L. Snowden; that
the defendants Adaline and Samuel J. Leedy, Catharine
and Sylvester Snodgrass, Margaret and James S. Ford,

and William T. Snowden, have declined to join as plaintiffs herein, and have made default as defendants.

"It is therefore ordered, adjudged, and decreed, that the title of the said David L. Snowden in and to two-sevenths, and the title of the said Charles Snowden in and to one-seventh of the SE. $\frac{1}{4}$, the SW. $\frac{1}{4}$ of the NW. $\frac{1}{4}$, the E. $\frac{1}{2}$ and SW. $\frac{1}{4}$ of the SW. $\frac{1}{4}$, of section 23, T. 7, R. 11 E, in Otoe county, Nebraska, be and the same is hereby in all respects quieted and confirmed; that the quit-claim deed from Elbert H. Shirk and wife to Adam W. Poe of date September 19th, 1870, recorded in Book U of Deeds, on pages 236, 237, and all subsequent and former deeds from said Poe or any of his grantees either immediate or remote in and to several tracts of land, are hereby set aside as clouds upon the title of the said plaintiffs, and are declared to be null and void; and that the said defendants, Ella M. Tyler, C. L. Tyler, and E. E. Lyle, hold the same in trust for the use and benefit of said plaintiffs to the extent of their several interests as hereinbefore found.

"It is therefore ordered and decreed that the title in and to the NE. $\frac{1}{4}$ of said section twenty-three, be and the same is hereby confirmed in the said defendant Connoy Hanks; that the title to the E. $\frac{1}{2}$ and the NW. $\frac{1}{4}$ of the NW. $\frac{1}{4}$ of said section 23 be and the same is hereby confirmed in the said defendant, Herman Floerke; that the title in and to the NW. $\frac{1}{4}$ of the SW. $\frac{1}{4}$ of said section 23 be and the same is hereby confirmed in the said defendant Joseph Mastalka.

"The said plaintiffs except to the findings and decree in favor of the defendants Hanks, Floerke, and Mastalka; and said defendants Tyler, Tyler, and Lyle, except to the findings and decree against them respectively.

\*        \*        \*        \*        \*        \*

"It is further ordered that plaintiffs pay one-half the costs in this case, and the defendants Tyler pay one-fourth of the costs, taxed at $75.42."

The plaintiffs appeal, and defendants Ella M. Tyler and husband and E. E. Lyle enter a cross appeal.

The testimony tends to show that in the summer of 1870 one Adam W. Poe, of Ohio, learned that one Elbert H. Shirk, of Indiana, was the owner, as appeared by the records of Otoe county, Nebraska, of all of section 23, township 7, range 11 east, in said county.   On his way home he found Mr. Shirk, and on inquiring about the land learned that it had been sold some years before to one Elijah Snowden, then deceased.   Mr. Poe found the heirs of said Snowden, consisting of Adaline Leedy, Catherine Snodgrass, Margaret Ford, and William T. Snowden, adults, and Sallie Snowden (now Sallie Leedy), David L. Snowden, and Charles F. Snowden, minors.   He also interviewed Jacob Wintrode, administrator of the estate of Elijah Snowden, deceased, and E. J. Anderson, the guardian of the minors. It was ascertained that the adult heirs, the administrator, and the guardian all concurred that the land should be sold to pay the debts owing by the estate of Snowden, deceased. But the deed which Shirk was said to have made to Elijah Snowden had been lost or destroyed, as Mr. Poe was informed, and had never been recorded in Otoe county or elsewhere.

To save the expense and delay of procuring an order from the proper court to sell the minors' interest, it was agreed that Mr. Shirk should make another deed or quitclaim to Mr. Poe for the purpose of making the record title complete, and that the adult heirs and the guardian should join in a deed of the interest of the heirs.   Mr. Poe therefore paid to the administrator $1,315.50 for the deed of all the heirs except Mrs. Ford, received also the deed from Mr. Shirk, as agreed, which latter deed was immediately, on September 23, 1870, filed for record in Otoe county. The agreed consideration for the land was $1,500 plus the unpaid taxes thereon—about $500 more.

In this transaction Mr. Poe had two partners, L. F.

D'Gette and E. F. Warren, who lived in Nebraska and managed the land and attended to its sale. Later on they divided the land or its proceeds among themselves.

Inasmuch as the records of Otoe county showed a straight and perfect chain of title from the United States to Adam W. Poe and to said D'Gette and Warren, it was deemed wisest not to record the deed from the Snowden heirs to D'Gette, as it would only create confusion in the chain of title, and would injure the sale of the land. In 1870 Mr. Poe conveyed the whole section to Mr. D'Gette and Mr. Warren by warranty deed. Shortly afterward D'Gette and Warren sold the southeast quarter to one J. J. Burke for $960 cash, by warranty deed, and subsequently the other portions, to different grantees, always by warranty deed, except the 200 acres to Ella M. Tyler (then Poe) which was by special warranty.

In July, 1879, the old deed from Mr. Shirk to Elijah Snowden, deceased, dated July 25, 1862, was found and recorded in Otoe county.

That was the first intimation that any one, except Messrs. Poe, D'Gette, and Warren, had that any of the Snowdens claimed an interest in said lands.

At the date of the commencement of this action, the said lands were owned and occupied severally, as follows:

Connoy Hanks owned the NE. ¼, 160 acres; J. J. Burke owned the SE. ¼, 160 acres; Ella M. Taylor owned the E. ½ and SW. ¼ of the SW. ¼, and the SW. ¼ of the NW. ¼, 160 acres.

Joseph Mastalka owned the NW. ¼ of the SW. ¼, 40 acres.

Herman Floerke owned the E. ½ and the NW. ¼ of the NW. ¼, 120 acres.

The plaintiff Daniel L. Snowden claims to own the undivided two-sevenths of said lands—one-seventh in his own right and the one-seventh as grantee of his sister, Sallie

Leedy, and Charles Snowden claims one-seventh part. These claims are based upon the fact that they never alienated their interest "according to law," by joining in any deed.

The first objection made by the defendants is, that the proper remedy of the plaintiffs was by an action of ejectment, and that a court of equity has no jurisdiction in the first instance to determine purely legal titles to land, where the plaintiff is out of possession. In other words, when the real estate is in the possession of another the proper remedy of one claiming the legal title is an action of ejectment. *Gregory v. Lancaster Co. Bank*, 16 Neb., 411. This is true, and had the defendants, either by demurrer or answer, raised an objection to the jurisdiction of the court, the decree would be reversed. In the trial of purely legal titles to land by a plaintiff out of possession against a defendant in possession, either party is entitled to submit questions of fact to a jury and to have the first verdict set aside. These provisions, however, may be waived. In the case at bar the defendants do not plead want of jurisdiction, they merely protest against the jurisdiction of the court, while they ask affirmative relief at its hands. In effect they file cross bills to the petition and ask to have their titles confirmed, thus invoking the equitable powers of the court and giving it jurisdiction. The first objection therefore, is untenable.

(2.) It is objected that the petition is multifarious because the tenants in common are joined in the petition. This defect, if it is one, appeared on the face of the petition and should have been raised by demurrer, and as it was not, it is waived.

(3.) It is claimed that the quit-claim deed from Shirk to Poe conveyed no title, and that *bona fide* purchasers from Poe were not protected. The rule, no doubt, is, that a person who purchases of another, real estate, and receives a quit-claim deed only therefor, is bound to enquire and as-

certain at his peril what outstanding equities exist, if any, against the title. The reason is, his grantor will not warrant the title even as against himself, therefore, it is a cause of suspicion. We are not prepared to hold, however, that a quit-claim deed, where the grantor has already conveyed, will not in any case convey title. It is not unreasonable to suppose that a quit-claim deed occurs in many titles where there is no outstanding equity. In this case the quit-claim deed in question was made by Shirk to Poe to supply a deed which was supposed to have been lost. It was made to the grantee of such of the heirs of Snowden as were of lawful age. Shirk, upon the records of Otoe county, apparently possessed the legal title to the land in controversy, and a conveyance from him to Poe, although in the form of a quit-claim deed, in form at least, transferred the legal title to Poe. No one seems to have been in possession of the land nor had charge of the same, and from the fact that more than eight years had elapsed from the time of the execution of the deed from Shirk to Snowden without the same having been recorded, certainly was a strong circumstance tending to show that the title still remained in Shirk. It is the policy of the law that titles to real estate shall become matters of certainty as far as possible, and that one who acts in good faith in purchasing, and pays the value of the property, shall be protected in his purchase. Any other rule would operate to prevent settlement and improvements upon lands. A party, therefore, who finds a complete chain of conveyances from the original grantee to his grantor upon the proper records of the county, may rely thereon provided he has no notice, either actual or constructive, of equities affecting the title, and is a purchaser for a sufficient consideration. All those persons, therefore, who purchased from D'Gette and Warren, without notice, for valuable consideration, and their grantees, will be protected. This rule, however, will not apply to those who are mere donees or who purchased with notice. As

against such persons, the plaintiff is entitled to relief. The plaintiffs, however, come into a court of equity, and as a condition of obtaining relief, must do equity. The defendants Tyler and Tyler and their grantors have paid the taxes on the land in question for more than twenty years. It is but justice that three-sevenths of these taxes should be refunded to them with interest thereon. The case will therefore be referred to ascertain the amount due for such taxes, and upon the payment thereof the decree of the court below will be affirmed except as to Lyle. We are unable to determine from the evidence the value of the land at the time Poe purchased the same, or the amount of money applied by Snowden's administrator to the settlement of the estate. The question as to the liability of the plaintiffs therefor does not arise in the case. Burke, from whom Lyle purchased, was a *bona fide* purchaser and was entitled to protection, and the fact that he conveyed to Lyle since the action was commenced does not render Lyle's title invalid. A *bona fide* purchaser for valuable consideration without notice, may convey to one with notice. *Alexander v. Pendleton*, 8 Cranch, 462. *Jackson v. Given*, 8 Johns., 141. *Bumpus v. Platner*, 1 Johns. Ch. R., 219. *Demarest v. Wynkoop*, 3 Id., 147. The reason is to prevent stagnation of property, and because the first person being entitled to hold and enjoy, must be equally entitled to sell. The decree as to Lyle will therefore be reversed.

DECREE ACCORDINGLY.

THE other judges concur.