ARLINGTON MILL & ELEVATOR COMPANY v. WILLIAM J.
YATES ET AL.

FILED DECEMBER 22, 1898. No. 8515.

1. **Execution: PURCHASER: PRIOR LIENS: ESTOPPEL.** One who buys
land at an execution sale, where an apparently valid mortgage
has been deducted as a prior incumbrance for the purpose of ap-
praisal, is thereby estopped from denying the validity of such
mortgage.

2. **Deed of Quitclaim.** A deed of quitclaim passes only the interest
of the grantor, subject to any equities which might be enforced
against him.

3. **Mortgage: EQUITABLE ESTATE.** An equitable estate may be mort-
gaged, and the subsequent conveyance of the legal title will not
defeat the mortgage where the rights of an innocent purchaser
without notice are not involved.

4. **Chattel Mortgages: CHANGE IN FORM OF DEBT.** A chattel mort-
gage generally will be construed to secure the debt and not
merely its evidence. Therefore, while the original debt remains,
the mortgage will not be defeated by a change in its form.

5. ——: **STATUTE OF LIMITATIONS.** It follows that such a mortgage
is not barred by the statute of limitations on the ground that
the original evidence of the debt would be barred, when it has
been kept alive by renewal notes.

6. ——: ——. The statute, whereby a chattel mortgage ceases to
be valid as against creditors or subsequent purchasers or mort-
gagees in good faith after the expiration of five years from the
filing thereof, protects only creditors, purchasers, and mortgagees
whose rights accrued after the five years.

7. **Vendor and Vendee: FIXTURES: PERSONALTY.** Articles, such as ma-
chinery, of an ambiguous character, and which may or may not
become attached to the freehold according to circumstances, will
retain their character of personalty by virtue of a contract be-
tween vendor and vendee to that effect, when the rights of inno-
cent purchasers relying on their apparent character are not
involved.

8. **Chattel Mortgages: DESCRIPTION OF PREMISES.** A chattel mortgage
specifically described the chattels, but described them as con-
tained in a certain building where they had not yet been put,
but where they were placed before any other rights intervened.
*Held*, That the misdescription of the place did not render the
mortgage void.

9. **Mortgages: IMPROVEMENTS.** The owner of mortgaged property who expends money in improvements, believing the mortgage to be ineffective, cannot defend a foreclosure case on that ground where there was no fraud, misrepresentation, or concealment of fact.

ERROR from the district court of Washington county. Tried below before BLAIR, J. *Affirmed.*

*L. W. Osborn, W. S. Cook, Frick & Dolezal,* and *Osborn & O'Hanlon,* for plaintiff in error.

References as to effect of the mortgage on partnership property, the execution sale of the realty, and the rights acquired by making the improvements: *Murrell v. Mandelbaum,* 19 S. W. Rep. [Tex.] 880; *Harney v. First Nat. Bank,* 29 Atl. Rep. [N. J.] 221; *Goldthwaite v. Janney,* 15 So. Rep. [Ala.] 560; *Rosenbaum v. Hayden,* 22 Neb. 744; *Donaldson v. Bank of Cape Fear,* 18 Am. Dec. [N. Car.] 577; *Tarbell v. West,* 86 N. Y. 286; *Barber v. Palmer,* 24 N. Y. Supp. 451; *Graham v. Thornton,* 9 So. Rep. [Miss.] 292.

The chattel mortgage should have been declared void from its inception, especially as to creditors and subsequent purchasers. (*Jones v. Richardson,* 10 Met. [Mass.] 481; *Wright v. Bircher,* 5 Mo. App. 322; *Barnard v. Eaton,* 2 Cush. [Mass.] 294; *Pettis v. Kellogg,* 7 Cush. [Mass.] 456; *Wilhelmi v. Leonard,* 13 Ia. 330.)

The notes were barred, but whether so or not, the lien of the chattel mortgage had expired. (Compiled Statutes, ch. 32, secs. 14, 16; *Thompson v. Van Vechten,* 27 N. Y. 568.)

*Jesse T. Davis, F. S. Howell,* and *Gregory, Day & Day, contra.*

IRVINE, C.

The Arlington Mill & Elevator Company, hereafter called the mill company, seeks by these proceedings in error to secure the reversal of a decree whereby its prop-

erty, or a portion thereof, was ordered sold to satisfy a real estate mortgage held by William J. Yates, the plaintiff below, and a chattel mortgage held by the Cockle Separator Manufacturing Company, hereafter called the Cockle Company. There were other parties to the record below, but the contest is confined to the mill company on one side and the two mortgagees named on the other, and only their respective rights are open for consideration.

The facts are somewhat complicated, but their statement in some detail is essential to an elucidation of the questions presented. One Shepard and one Lane seem to have been the owners of a large quantity of land in Arlington, Washington county. In 1888 one Y. D. Denison appeared in Arlington with a project to erect a flouring mill. He procured certain donations, and obtained from Shepard and Lane a contract, informal in its terms but sufficient to meet legal requirements, whereby Shepard and Lane agreed to convey to "Denison & Co." certain land, upon the completion and putting in operation thereon of a flouring mill of forty barrels capacity. At that time Denison had no partner. The enterprise was his own, but he procured the contract in that form in contemplation of taking a partner. He proceeded to erect a mill which all the evidence on the subject tends to show met the requirements of the contract. Shepard and Lane did not, however, make the conveyance. Denison purchased machinery for the mill from the Cockle Company of Milwaukee, giving his notes for the purchase-money and securing the same by chattel mortgage on the machinery purchased. This mortgage was dated October 4, 1888, and was filed in the office of the county clerk of Washington county October 11. The machinery was described as contained in the elevator in Arlington situated on the land above mentioned. In fact the machinery had not left Milwaukee when the mortgage was executed, but it was about that time shipped and was soon thereafter placed in the mill. Denison about this

time disposed of a one-half interest in the business to one Baith, who afterward sold to one Monroe, and Monroe later bought one-half of Denison's remaining interest. These transfers do not seem to have been evidenced by any instrument in writing. Having become indebted to one McMasters, Denison, May 22, 1891, executed a real estate mortgage to him, containing covenants of warranty and purporting to convey a one-fourth interest in the land already mentioned, and apparently a small tract additional. This is the mortgage which Yates, who acquired it from McMasters, brought this action to foreclose. The Commercial National Bank of Fremont, having obtained certain judgments against Denison and Monroe, caused executions to be levied on the land, and a sale was made to McMasters. In making the appraisement for the purpose of the sale the whole amount of the Yates mortgage was deducted as a lien prior to the judgments. McMasters knew, and was before he bought expressly warned, of the claim of the Cockle Company on the machinery. McMasters conveyed by quitclaim deed to Jewett & Baith. After this suit was begun the mill company was incorporated and Jewett & Baith conveyed to it, also by quitclaim. In the meantime Lane had conveyed his interest in the legal title to Shepard. In April, 1892, the legal title passed to L. M. Keene, ostensibly as trustee for Martha Shepard and Ada Shepard. In July, 1892, Shepard undertook to convey by warranty deed to McMasters, who then held under the sheriff's deed, but that conveyance passed nothing, as it was subsequent to the deed to Keene. In November, 1892, Keene conveyed by quitclaim to Jewett & Baith, who had in the meantime bought McMaster's title. Jewett & Baith expended large sums in improving the property. The decree of the district court ordered a sale of the machinery described in the Cockle Company's mortgage to satisfy the same, and a sale of the mortgaged real estate to satisfy Yates.

The number of questions involved requires that each

be disposed of as briefly as possible, but some are of sufficient importance to warrant a more extended discussion than is here practicable.

With regard to the Yates mortgage it is contended that Denison had no mortgageable interest on account of the state of his title, and also because the land was partnership property and he could not convey any fixed interest, but only that which would result to him on the settlement of the partnership° with Denison. Further, that the land having been sold on execution to pay partnership debts, that sale passed title as against one claiming under a single partner. Reliance is also placed on the title derived through Keene. The nature of Denison's interest and the original effect of the mortgage are immaterial. When McMasters bought at the execution sale he bought under an appraisement recognizing the mortgage as a valid senior incumbrance, his bid was based on that hypothesis, and he became estopped to deny the validity of that mortgage. (*Koch v. Losch*, 31 Neb. 625; *Nye & Schneider Co. v. Fahrenholz*, 49 Neb. 276; *Farmers Loan & Trust Co. v. Schwenk*, 54 Neb. 657.) The conveyances whereby the title so acquired by McMasters passed to the mill company are all deeds of quitclaim, and operated to convey McMasters' rights and no greater. (*Lincoln Building & Saving Ass'n v. Hass*, 10 Neb. 581; *Savage v. Hazard*, 11 Neb. 323; *Hoyt v. Schuyler*, 19 Neb. 657; *Snowden v. Tyler*, 21 Neb. 199; *Bowman v. Griffith*, 35 Neb. 361; *Connell v. Galligher*, 36 Neb. 749; *Pleasants v. Blodgett*, 39 Neb. 741.) Nor is the case of the mill company aided by the subsequent conveyances of the legal title. In this state an equitable estate may be mortgaged, and the lien of that mortgage will not be defeated by a subsequent conveyance of the naked legal title, where the rights of innocent purchasers are not involved. (*Lincoln Building & Saving Ass'n v. Hass, supra.*) The conveyance of the legal title to the successors of Denison operated only as an execution of Shepard's contract to convey, and through the covenants of warranty

in the mortgage, if not independently thereof, inured to the benefit of the mortgagee.

The objections urged to the chattel mortgage are many. In the first place it is said that it was barred by the statute of limitations. This argument is founded on the fact that the statute would have run against the notes which the mortgage was first given to secure. Some payments had been made on these and new notes had from time to time been given in extension and renewal. The last ones were well within the period of limitations. Generally, a mortgage is held to secure the debt and not merely the instruments evidencing it. While the original debt remains the mortgage is not defeated by a change in the form of the debt or its evidence. It on the contrary continues as security for the debt in its new form. (*Sloan v. Rice*, 41 Ia. 465; *Wayman v. Cochrane*, 35 Ill. 152; *Davis v. Maynard*, 9 Mass. 242; *Boxheimer v. Gunn*, 24 Mich. 372; *Williams v. Starr*, 5 Wis. 534.)

Next it is said that the mill company is protected by section 16, chapter 32, Compiled Statutes, whereby a chattel mortgage "shall cease to be valid as against the creditors of the person making the same, or subsequent purchasers or mortgagees in good faith, after the expiration of five years from the filing of the same copy thereof." While there is some conflict as to the construction of similar statutes, the better authority and the better reason favor the view that the object is to protect persons who acquire rights after the expiration of the time named, not to protect those whose rights accrued when they were bound to take notice of the record, but against whom enforcement is not sought until after the period. (*Farmers & Merchants Bank v. Bank of Glen Elder*, 26 Pac. Rep. [Kan.] 680; *Nix v. Wiswell*, 54 N. W. Rep. [Wis.] 620.) This disposes of the claim through McMasters, Jewett, and Baith, either as purchasers or as successors to creditors. All their rights accrued before the five years had elapsed. The mill company bought *pendente lite*, and, moreover, it does not claim to have bought without

notice, and is not, therefore, a purchaser in good faith. Indeed, it is best now to remark that none of the participants in these transactions stands in the attitude of a creditor or purchaser without notice of the rights of others,—a consideration which considerably simplifies the case.

It is argued that the machinery became a part of the realty, and was no longer subject to the chattel mortgage. All evidence as to manner of attachment was rejected on the objection of the mill company itself, on the ground that it was immaterial. It can hardly now be permitted to say that such evidence was material, and claim anything by reason of its absence. There is nothing in the nature of such machinery to stamp it as realty under all circumstances. It may become so or not according to circumstances. If a man sells bricks or nails or shingles for the purpose of erecting a house, these cannot in their specific character be continued, after such use, as personalty, because their very nature forbids such a result; but when an article is of an ambiguous character, such that it may either remain personalty or become attached to the freehold, much depends on the intention of the parties. This is especially true of trade fixtures and of machinery for trade purposes, where they may be removed without substantially impairing, not the property, taking its value with them remaining, but the property considered separately. There it is held that where the vendor and vendee agree that they shall remain personal property they do so, unless perhaps where innocent purchasers have acquired rights in reliance upon their apparent character. From the large number of cases illustrating this principle there may be cited the following, where the contest was between a vendor seeking to enforce the purchase price against the articles as personalty, and an execution purchaser of the real estate: *Sisson v. Hibbard*, 75 N. Y. 542; *Manwaring v. Jenison*, 61 Mich. 117; *Sword v. Low*, 122 Ill. 487.

Finally, it is argued that the machinery did not belong to Denison when the mortgage was made and that a chattel mortgage will not attach to after-acquired chattels. We need not consider the legal point made, because the proof shows that if Denison had not purchased the property prior to the mortgage, the purchase and the execution of the mortgage were concurrent. The title passed in Milwaukee. The mortgage was recorded in Washington county, which seems to have been then Denison's residence, and this was proper and sufficient. (Compiled Statutes, ch. 32, sec. 14.) The record would not perhaps impart notice until the goods were placed in the building described as containing them; but we do not think that it was forever void, even as against those buying with full notice, when it specifically described the property, merely because it stated the location as a building where it was not yet placed, although it was intended to at once place it there and when it was there placed before any intervening rights accrued.

Stress is laid on the fact that the defendants made large outlays on the faith of their ownership discharged of the mortgages. If so, the mistake was one of law alone; there was no concealment or ignorance of any facts affecting the rights of the parties. The case is like that of any mortgagor who improves the property while the mortgage subsists.

The decree is criticised as directing a sale of all the land instead of only the one-fourth covered by the mortgage of Yates. The language of the decree is not the aptest in this regard, but it is nevertheless sufficiently clear that it directs the sale of only an undivided one-fourth.

AFFIRMED.