THOMAS RODEN, APPELLEE, v. PARIS A. WILLIAMS, AP-PELLANT.

FILED JUNE 3, 1916. No. 18868.

1. Contracts: PAROL EVIDENCE. "Where a contract of sale has been consummated by writing, the presumption is that the writing contains the whole contract, and, in the absence of fraud, mistake or ambiguity of expression in the contract itself, parol evidence is inadmissible to change or vary its terms." *Apking v. Hoefer*, 74 Neb. 325.

2. Vendor and Purchaser: OUTHOUSES. Buildings, such as corn cribs, cattle sheds, hog sheds, and other customary outhouses, situated upon a farm, are of the general class which a prospective buyer inspecting the farm would have a right to assume are part of the freehold. They are not such as to put him upon inquiry in reference thereto, even though he may then know that the farm is occupied by a tenant.

3. ———: REMOVAL OF OUTHOUSES: LIABILITY OF VENDOR. And where the owner of such a farm sells the same and enters into a written contract of sale thereof, without reserving such buildings, and such contract is finally consummated by the payment to him by the purchaser of the full agreed consideration for such farm, the seller will be liable to the purchaser for the value of such improvements, if owned by the tenant and removed by him without the consent of such purchaser.

4.  **Appeal:** CONFLICTING EVIDENCE. "The verdict of a jury will not be set aside for want of evidence to support it, if there is a substantial conflict of evidence upon the issue presented." *First Nat. Bank v. Hedgecock*, 87 Neb. 220.

APPEAL from the district court for Franklin county: HARRY S. DUNGAN, JUDGE. *Affirmed.*

*W. C. Dorsey,* for appellant.

*George Losey* and *J. C. McReynolds, contra.*

FAWCETT, J.,

This action was brought in the district court for Franklin county, to recover damages which plaintiff claims to have sustained by reason of a breach of certain conditions in a contract, entered into between plaintiff and defendant, for the sale by the latter to the former of a quarter section of land. Plaintiff recovered, and defendant appeals.

The evidence fairly establishes the following facts: In the fall of 1912, defendant listed the land for sale with one Myers, a real estate agent. Myers negotiated a sale of the land to plaintiff for $9,000, and prepared a contract of sale for execution by the parties. The contract provided that the consideration should be paid, $300 cash, $1,000 on or before December 16, and the balance of $7,700 on or before March 1, 1913, "less $2,600 mortgage at 5 per cent. interest," and that plaintiff was to take the property subject to the taxes for 1912 and subsequent taxes. The contract was signed by defendant and left with his agent, Myers, for execution by plaintiff. A few hours later plaintiff called at the office of Myers and the contract was submitted to him. He objected to assuming the taxes for 1912 and refused to sign unless there were inserted the words "Taxes of 1912 paid." Myers said he would make such change, with the understanding that the deal would not go through unless defendant agreed to it. Plaintiff agreed to that arrangement and Myers then changed the contract by in-

serting those words. Thereupon plaintiff signed the contract and paid Myers the $300 cash payment. Some two or three hours later in the day Myers met defendant and told him what had been done. He testifies that he told defendant that plaintiff refused to buy the place unless the taxes were paid by defendant; that defendant "looked it over and said it was all right, that he wouldn't let the taxes stop the sale, and I asked him then if it was a go, and he said, 'Yes.' Q. If I understand you, Mr. Myers, Mr. Williams agreed finally to the contract as it was amended? A. Yes, sir." Defendant admits having stated to Myers, "Well I don't know as I would let the taxes spoil the contract," but says that afterwards he considered the matter and, as he "had been on a deal with a man for the farm for $10,000," and plaintiff had "jewed us down" $600, he made up his mind that he would not stand for the taxes at all. He did, however, accept the $300 which plaintiff had paid. The above facts present the first question to be determined, viz.: Did defendant by what he said to Myers after Myers had changed the contract, and by the acceptance of the $300, ratify and confirm the contract which he had signed, as changed by Myers? We agree with the jury that he did. On December 16 the parties met for the purpose of adjusting the second payment of $1,000 provided by the contract to be paid on that date. This appears to have been the first time plaintiff and defendant had met. Defendant then insisted that plaintiff must pay the taxes for 1912 and the interest on the mortgage from the last interest payment, viz., June, 1912. The evidence is in conflict as to whether or not plaintiff agreed to that demand. It would sustain a verdict either way. The verdict for plaintiff must therefore stand.

A further controversy arose between the parties, subsequent to the execution of the written contract, with regard to certain improvements which defendant's tenant, then in possession of the farm, had placed upon it. The improvements consisted of a granary, inside of and boarded up to the corncrib; a "big" shed that was built up a-

gainst the barn; a cattle shed, 16 by 14, which had been built in the cattle yard; a hog shed and a privy.   The right of defendant, or his tenant, to remove these improvements must be determined by the terms of the written contract. In that contract no reseveration is made by defendant of the improvements in controversy.   The improvements were of a class which any one inspecting the farm would have a right to assume were a part of the freehold.   They were not such as to put a prospective purchaser upon inquiry in reference thereto, even though he knew the farm was then occupied by a tenant.   They were of such a class as to impose upon the seller the duty of advising the prospective purchaser of the fact that they belonged to the tenant and not to the freehold.   It is true, the parties had some conversation in relation to the improvements at their first meeting on December 16, which was a month after the execution of the contract.   Nothing then said could release defendant from his liability for the value of the improvements if removed by him or his tenant, unless the plaintiff then agreed to release him from such liability.   The evidence upon this point is in conflict. The jury found for plaintiff upon sufficient evidence to sustain their finding, and it is conclusive.

The contract required the final payment to be made on or before March 1, 1913.   Defendant deposited with the bank at Riverton his copy of the contract, and also a deed to the land, to be held until the final payment was made to the bank for him, when the deed was to be delivered.   It is urged by defendant that, when plaintiff made the final payment on February 28, he had been told by defendant that he (defendant) would not make him a deed to the land unless he paid the 1912 taxes, and the interest on the mortgage from the last interest payment date in June, 1912; that he knew when he had made such payment that the improvements in controversy had been removed by the tenant.   In support of this contention defendant says that plaintiff made the final payment with full knowledge of the facts and without duress or fraud;

that he thereby acceded to the demands of the defendant, and, whether such demands were well founded or not, the final payment made by him under such circumstances was a voluntary payment and cannot be recovered back, wholly or in part. We are unable to concur in defendant's view of the law applicable to the facts shown by the record. This court has settled the rule applicable to such facts. "Where a contract of sale has been consummated by writing, the presumption is that the writing contains the whole contract, and, in the absence of fraud, mistake or ambiguity of expression in the contract itself, parol evidence is inadmissible to change or vary its terms." *Apking v. Hoefer,* 74 Neb. 325. In the opinion (p. 328) we said: "Even if the defendant agreed orally, after the contract was executed, that the plaintiffs might have a few days after July 10 to meet the payment maturing on that date, it was a naked promise, without consideration, and could not be enforced. It follows therefore that the court erred in the admission of oral evidence to vary the terms of the written contract. It is clearly apparent from the written contract that time was of the essence of it, and that the failure of the plaintiffs to meet the payment maturing on the 10th day of July, 1902, gave defendant the option to forfeit the contract and declare it at an end." That such a contract as the one involved here manifests an intention to make time of the essence of the contract is also held in *Cadwell v. Smith,* 83 Neb. 567. When plaintiff appeared at the bank on February 28 to make his final payment and obtain his deed, he had only one more day remaining in which to comply with the terms of his contract as to the making of such final payment. Had he failed to make his final payment on that day or the next, defendant, by the terms of the contract, would have been released from all liability thereunder, and plaintiff would have lost his bargain, and would, probably, have had difficulty in obtaining a return of the $1,300 which he had paid thereon.

All of the points in controversy, above referred to, were properly submitted to the jury by the instructions of the court. The verdict returned under those instructions has sufficient evidence to support it. Finding no reversible error in the record, the judgment of the district court is

AFFIRMED.

HAMER, J., not sitting.