LESTER STIBOR ET AL., APPELLANTS, V. WILLIAM FARRELL ET AL., APPELLEES.

129 N. W. 2d 449

Filed June 26, 1964. No. 35681.

John P. Jensen and Paine & Paine, for appellants.

Dunmire & Blessing, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ

SPENCER, J.

This is an action for an accounting as to the value and rental of a grain storage bin and for a declaration of trust. Plaintiffs and appellants are Lester Stibor and Helen Stibor, husband and wife, hereinafter referred to collectively as appellants, and individually by name. Defendants and appellees are William Farrell and Donald D. Farrell, and William Farrell and Son, a copartnership. They will hereinafter be referred to collectively as appellees and individually by name.

The dispute involves the ownership of a steel grain bin, which will hereinafter be referred to as the bin, constructed on farm real estate purchased from the appellants by the appellees. The bin rests on a concrete foundation to which it is attached by means of wires passed through U-bolts embedded in the concrete every 6 or 8 feet around the outer circumference of the bin, and is some 27 feet in diameter. Its height at the eaves is 16 feet and at the peak is 21 feet. Its sides consist of steel panels 10 feet long and 2½ feet wide, which are bolted together every inch on the vertical joints and every 6 inches on the horizontal joints. The roof is constructed of metal panels bolted together, and also bolted to the sides of the bin at the eaves.

The bin was erected in October or November of 1960 at a cost of $2,755. The farm purchase agreement was signed by the appellees January 31, 1961. The deed was executed and delivered March 20, 1961. The bin

was mortgaged to the Commodity Credit Corporation in the amount of $1,884.06, pursuant to an application for a mortgage on a farm storage facility dated November 14, 1960. This chattel mortgage was dated and filed for record December 16, 1960.

Lester Stibor testified this loan was paid subsequent to the delivery of the deed. It is not possible to sufficiently reconcile the releases in evidence with the transaction so as to ascertain the date of the payment and release, but it was long after the delivery of the deed.

The evidence of the parties is in direct conflict on the material questions of fact. The evidence, however, of John L. Johnson, the agent who handled the sale for the appellants and who will hereinafter be referred to as agent, in most particulars corroborates the evidence of the appellees. The trial court, at the conclusion of all of the evidence, took the case under advisement and subsequently dismissed the appellants' petition. Appellants perfected an appeal to this court, urging that the trial court erred in dismissing appellants' petition and in overruling appellants' motion for a new trial.

We review this record in the light of the well-established rule that actions in equity on appeal to this court are triable de novo, subject, however, to the rule that when evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. See Dartmouth College v. Rose, 172 Neb. 764, 112 N. W. 2d 256.

We will detail only sufficient of the facts to establish the direct conflict. In January 1961, appellees made an offer for the farm of $52,000. The agent testified that when this offer was submitted to the appellants, Lester Stibor said "he couldn't take the offer because he had just recently installed a new grain storage bin on the place and he would have to have the full amount

* * *." Lester Stibor admits this offer was communicated by the agent, but denies that the grain bin was mentioned in the conversation. Helen Stibor denied being present when the offer was communicated to her husband. The appellees testified that the agent told them of the rejection of the offer and gave the construction of the bin as the reason for the owners' insistence on the full list price.

Appellees testified that 4 or 5 days before the purchase agreement was signed they met with Lester Stibor and the agent in the agent's office at Shelton, Nebraska, and that the purpose of the meeting was to determine what was and what was not included in the sale of the farm. It is the testimony of the appellees and the agent that Lester Stibor, in response to a direct question, said the bin went with the place, but that the irrigation equipment, which he could use on his new place, did not. Lester Stibor admits that he told appellees that the irrigation equipment did not go with the farm, but denies that there was any discussion about the bin.

On January 31, 1961, appellees agreed to purchase the farm for the list price of $56,000, and signed the purchase agreement. This agreement provided that the property was to be conveyed free of encumbrance except for a Prudential Insurance Company mortgage which was to be assumed by the purchasers. The agreement had the following provision: "Purchaser to be given privilege to start cleaning premises immediatly (sic) after purchase agreement is signed. All stored Government grain to be removed by Sept. 15, 1961." There was no reference in the contract of any nature to the bin, although the government grain was stored in it. Nor was it mentioned in the deed when it was executed.

Mr. and Mrs. Donald Farrell moved onto the farm on the 6th or 7th of March 1961. The balance of the purchase price was paid and the deed was delivered

March 20, 1961. Subsequent to the signing of the purchase agreement, and before the delivery of the deed, the appellees learned that the bin was mortgaged to the Commodity Credit Corporation. William Farrell testified that he talked to the agent about the mortgage. The agent testified he told William Farrell the property was being transferred by warranty deed, and "that the title wouldn't be clear unless this mortgage was paid by Mr. Stibor, and that I didn't think we needed to be concerned about it at all."

Lester Stibor testified that on March 16 or 17, 1961, he had a conversation with the appellees in the agent's office and that he there told them the grain bin was personal property and couldn't be sold because it was mortgaged, and that the appellees claimed it belonged with the real estate. He made no response to this claim, and there was no further discussion about it. Lester Stibor on cross-examination admitted that he signed the deed and accepted the money for the property after this conversation, knowing that appellees claimed the bin under the purchase agreement.

Appellants have cited cases from many jurisdictions over the country supporting the rule that an agreement that a fixture shall retain its status as personal property even though attached to real estate is to be implied from a chattel mortgage given by the owner of land to the seller of the chattel. This is the rule of those cases where the conflict is between the owner of the chattel mortgage and the owner of the land who executed the mortgage, or someone in privity with him. Appellants, however, have confused the situation of the parties and have tried to subvert an equitable principle to shift a burden of proof from themselves to the appellees.

We are not here concerned with the rights of the Commodity Credit Corporation if the mortgage had not been paid. We are concerned with the rights of a purchaser of the property from the owner of the property who was

the mortgagor. The rule contended for by appellants is not the rule when the parties involved are the mortgagor himself and a subsequent purchaser to whom the mortgagor as vendor has conveyed the real estate, which is the instant case.

Even if the rule were as contended for by appellants, we held in Arlington Mill & Elevator Co. v. Yates, 57 Neb. 286, 77 N. W. 677, as follows: "Articles, such as machinery, of an ambiguous character, and which may or may not become attached to the freehold according to circumstances, will retain their character of personalty by virtue of a contract between vendor and vendee to that effect, *when the rights of innocent purchasers relying on their apparent character are not involved.*" (Italics supplied.) Here we have a situation where appellees were justified in relying on the apparent character when the purchase agreement was signed. No purpose will be served by a discussion of the cases cited by appellants covering their contention, because they are not in point herein.

Appellants also urge that a chattel mortgage when duly filed is constructive notice to the world of the mortgage. With this we agree. But we do not agree that a mortgagor who becomes a vendor can take advantage of the fact that his purchaser did not check the record. The recording act is intended to protect the security holder, not to give a mortgagor an opportunity to take advantage of those to whom he sells.

As we view the record, the evidence establishes that the parties agreed that the bin was a fixture and went with the farm. There is no evidence that it was to be treated as a chattel. Appellants seek to imply this because of the mortgage on record to the Commodity Credit Corporation. However, for the sake of further discussion, we will assume that the bin was not discussed or separately considered prior to the signing of the purchase agreement.

Appellees were justified in believing the bin was a

fixture at the time they signed the purchase agreement, January 31, 1961. It was a fixture because of the character of its installation on the premises as well.as by the nature of its use upon the property. Appellees saw it when they inspected the property. Its character was such they had a right to assume it was a part of the freehold. It was the reason given to them as to why their original offer was not accepted. The testimony of the only disinterested witness is conclusive that the bin was always a part of the deal. Lester Stibor's own evidence is that no dispute arose until subsequent to the purchase agreement. His only contrary evidence is that the bin was not discussed before the purchase agreement was signed. This and the fact it was not excepted in the purchase agreement would be sufficient to defeat his claim. It is also interesting to note that he admits he signed the deed knowing that appellees were claiming the bin went with the freehold.

What we said in Roden v. Williams, 100 Neb. 46, 158 N. W. 360, L. R. A. 1917A 415, is applicable here. We held as follows in that case: "Buildings, such as corn cribs, cattle sheds, hog sheds, and other customary outhouses, situated upon a farm, are of the general class which a prospective buyer inspecting the farm would have a right to assume are part of the freehold. They are not such as to put him upon inquiry in reference thereto, even though he may then know that the farm is occupied by a tenant.

"And where the owner of such a farm sells the same and enters into a written contract of sale thereof, without reserving such buildings, and such contract is finally consummated by the payment to him by the purchaser of the full agreed consideration for such farm, the seller will be liable to the purchaser for the value of such improvements, if owned by the tenant and removed by him without the consent of such purchaser." See, also, Joiner v. Pound, 149 Neb. 321, 31 N. W. 2d 100.

The rule applicable in this case is well stated in 22

Am. Jur., Fixtures, § 36, p. 744, as follows: "As between the vendor and purchaser of real estate, the modern doctrine is that the rule for determining what is a fixture is strongly construed against the vendor, and that whatever is essential for the purposes for which the realty is used, and which has actually or constructively been annexed, is a fixture, and passes to the grantee unless it is excepted from the operation of the deed. It is entirely possible that the same article may be real estate as between grantor and grantee, and personal property as between the grantor and third persons."

A recognized text writer, in 1 Thompson on Real Property (Perm. Ed.), Fixtures, § 225, p. 380, states the rule as follows: "As a general thing, a tenant may remove what he has added, when he can do so without injury to the estate, unless it has become by its manner of addition an integral part of the original premises. But not so a vendor; as against him, all fixtures pass to his vendee, even though erected for the purposes of trade and manufacture, or for ornament, or domestic use, unless specially reserved in the conveyance."

Appellants argue: "It is significant that neither the deed in this case nor the purchase agreement specifically provided for the ownership of grain bin." We agree. It is significant. As the authorities cited above indicate, because the bin was not excepted, it passes with the freehold. We hold that if the intention had been that the bin was to be considered as personalty, and was not to pass with the land, it should have been excepted in the contract.

Appellants also argue that because they paid the mortgage they should be subrogated to the rights of the Commodity Credit Corporation. This argument is fallacious on its face and requires no extended discussion. The purchase agreement required appellants to convey the property free of encumbrance except for the Prudential Insurance Company mortgage. To do so it would be necessary for appellants to pay off the mortgage on

the bin. This they have done. They now attempt to apply the doctrine announced in Lee v. Newell, 96 Neb. 209, 147 N. W. 684, where we held: "A court of equity will apply the doctrine of subrogation where to refrain from so doing would permit a person who has received the benefit of money paid under a mistake of fact, which discharged a lien upon real estate, to retain such benefit under such circumstances that equity and good conscience dictate its repayment or the preservation of the lien." It should be fairly evident that this rule has no application to the facts in this case.

For the reasons given, the judgment of the trial court dismissing the appellants' petition is affirmed.

AFFIRMED.