[No. 15914.   Department Two.—October 13, 1896.]

ANN MURPHY, APPELLANT, v. EDWARD W. CLAY-
TON, RESPONDENT.

ESTATES OF DECEASED PERSONS—REPLEVIN AGAINST ADMINISTRATOR—SALE
BY DECEDENT—CHANGE OF POSSESSION—VALIDITY AS TO CREDITORS—
PLEADING—EVIDENCE.—In an action of replevin against an administra-
tor, for the recovery of horses, sold by the decedent in his lifetime to the
plaintiff, which sale was good as between the parties, in order that the
administrator may avoid the sale in the interest of creditors of the de-
cedent upon the ground that there was not a sufficient delivery and
change of possession, as against his creditors, the facts which it is
claimed made the sale void as to creditors must be specially pleaded,
and cannot be proved under an allegation of ownership of the decedent
at the time of his death, nor under a denial of plaintiff's ownership and
right of possession.

ID.—ATTACK UPON SALE OF DECEDENT—CLAIMS OF CREDITORS—INSUF-
FICIENCY OF ASSETS.—Before an administrator can attack a sale of per-
sonal property made by the decedent in his lifetime, in the interest of
creditors, it must appear that there are creditors of the estate, and that
there is an insufficiency of assets in the hands of the administrator to
meet the claims of creditors which have been allowed, or who have re-
covered judgment against the estate.

ID.—DISALLOWED AND LITIGATED CLAIMS NOT CONSIDERED.—In determin-
ing whether there is or is not a sufficiency of assets in the hands of the
administrator to meet the claims of creditors, claims which have been
disallowed, and are being litigated by the administrator, cannot be con-
sidered; and if there is a sufficiency of assets to meet the allowed and
determined claims of creditors, the administrator cannot recover any
property transferred by the decedent in his lifetime, nor successfully
defend a suit of replevin for such property in the interest of creditors.

APPEAL from a judgment of the Superior Court of
Santa Clara County.   JOHN REYNOLDS, Judge.

The facts are stated in the opinion.

*George W. Lewis,* and *J. H. Campbell,* for Appellant.

The sale and transfer of the horses in question here,
mentioned in findings 5 and 6, whether void as to cred-
itors or not, was a good and valid sale between the
parties. (*Visher* v. *Webster,* 13 Cal. 58, 61; *Crill* v.
*Doyle,* 53 Cal. 714.) The horses not being the property
of Murphy at his death, formed no part of his estate.
(Civ. Code, sec. 1384.) The answer counts upon Mur-

phy's ownership of the horses at the time of his death, and he cannot recover without proof of such ownership. (*Crill* v. *Doyle, supra.*)    Defendant cannot defend for creditors, under a general denial, nor recover for them, unless the estate is insolvent. (Code Civ. Proc., sec. 1589; Pomeroy's Remedies and Remedial Rights, sec. 678; Bliss on Code Pleading, N. S., sec. 329; *Glazer* v. *Clift*, 10 Cal. 304.)

*Kittredge & Kraft,* for Respondent.

The proof of a transfer in fraud of creditors, was admissible under the general denial. (*Grum* v. *Barney*, 55 Cal. 254; *Stephens* v. *Hallstead*, 58 Cal. 193; *Mason* v. *Vestal*, 88 Cal. 356; 22 Am. St. Rep. 310.)    If the denial was insufficient, the admission of evidence without objection, waived any defect in the pleading. (*Scott* v. *Sierra Lumber Co.*, 67 Cal. 75; *In re Doyle*, 73 Cal. 568.) The sale was void, and no title passed; but the sale was as to creditors as if no transfer had been made. (Civ. Code, sec. 3440; *Cerf* v. *Phillips*, 75 Cal. 185; *Judson* v. *Lyford*, 84 Cal. 507, 508; *Mason* v. *Vestal*, 88 Cal. 397; 22 Am. St. Rep. 310.)    The same rule applies to any representative of the creditors. (*Estate of Moore*, 57 Cal. 442; *Phelan* v. *Smith*, 100 Cal. 165; *Merrill* v. *Hurlburt*, 63 Cal. 494; *Brown* v. *Bank of Napa*, 77 Cal. 546; *Francisco* v. *Aguirre*, 94 Cal. 185.)

THE COURT.—After due consideration of this cause in bank, we are satisfied with the conclusion reached and the opinion rendered when it was in Department; and, for the reasons given in said opinion, the judgment awarding the defendant the possession of the animals mentioned in the fifth finding is reversed, with directions to the superior court to enter judgment upon the findings in favor of the plaintiff for the possession of said animals, or for the value thereof, as found by the court, in case a delivery thereof to the plaintiff cannot be had.

BEATTY, C. J., dissenting.—I dissent.    Section 3440 of the Civil Code reads as follows: "Every transfer of

personal property, other than a thing in action, or a ship or cargo at sea, or in a foreign port, and every lien thereon, other than a mortgage, when allowed by law, and a contract of bottomry or respondentia, is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent and therefore void against those who are his creditors while he remains in possession, and the successors in interest of such creditors, and against any persons on whom his estate devolves in trust for the benefit of others than himself, and against purchasers and encumbrancers in good faith subsequent to the transfer."

The property of a person dying intestate passes to his heirs, but it passes to them subject to the control of the probate court, and to the possession of an administrator for purposes of administration. (Civ. Code, sec. 1384.) The purposes of administration embrace the payment of expenses of administration, family allowance, and the debts of the decedent. For these purposes the administrator is vested with power to sell the estate and to apply the proceeds. He is a trustee for the creditors; the estate of the decedent has devolved upon him in trust for their benefit. There can be no question that he comes within the very terms of the section above quoted (*Francisco* v. *Aguirre*, 94 Cal. 185), and still less that he is within the spirit and policy of the law. Up to the moment of a man's death his creditors may secure their debts by attachment of any personal property he may have sold without delivering it to his vendee. As soon as he dies this remedy is taken away, but there is no reason why they should be deprived of all remedy, and the law which enables the administrator to retain possession of such property for the purpose of applying its proceeds, if necessary, to the payment of debts, is far more equitable, at the same time that it is less burdensome, than the law which permits an attachment in the lifetime of the vendor.

But even if an administrator is not one upon whom the estate of the vendor devolyes in trust for others within the meaning of section 3440, still he represents creditors exactly as a sheriff does who seizes goods of a fraudulent vendor on execution, and he may justify upon the same grounds.

The sale of the horses in controversy here was, therefore, void as to the defendant, and the only question is whether he was, nevertheless, obliged to relinquish the possession of them on demand of the plaintiff. The contention of appellant is that he could not refuse her demand, unless all the facts existed which an administrator is required to aver and prove in order to maintain the action authorized by section 1589 of the Code of Civil Procedure, for the recovery of property fraudulently conveyed by the decedent in his lifetime.

But this is a conclusion which by no means follows. The law does not encourage useless litigation, and, therefore, does not authorize the administrator to commence an action for which there is no apparent necessity. He cannot sue to recover assets for the estate, unless it appears that there is an actual deficiency of assets. But when he has property in his hands which was in the possession of the intestate at the time of his death, and which has regularly devolved upon him—property which, if necessary, is applicable to the purposes of administration—it is his duty to retain the possession until it appears that it will not be needed. The burden of proof and of allegation on the question of necessity rests, and properly rests, on the party commencing the action. If the administrator when he commences an action to recover assets must show a necessity for their recovery, by parity of reasoning the party who seeks by an action to deprive him of assets should at least be required to show that they will not be needed for purposes of administration. And even then his action would be unnecessary, for he could obtain all the relief to which he is entitled by petition to the probate court. If he shows in that *forum* that he has a title to property in the hands of the

administrator which is good against distributees of the estate, the court might, as in case of partial distribution, authorize the administrator to deliver it to him if it can be safely done, and, if such relief could not be granted, it would at least not order such property sold for purposes of administration until the other estate had been exhausted. Then upon distribution it would either be delivered to him, or he would be left free to assert his title against the distributee to whom it was allotted. In short, if such property is not needed for purposes of administration the vendee of the decedent has an ample remedy without this action—if it is needed for purposes of administration he has no right to the property. His position with respect to such property is no better than that of an heir with respect to unsold property of the intestate. It is his if not needed for the payment of debts, and, like the heir, he should wait till that fact is ascertained.

Appellant contends that the answer of the defendant is not sufficient to enable him to prove his defense. The answer alleges everything that it was necessary for the defendant to prove or for the court to find. It shows that he is administrator of Daniel J. Murphy, that the horses in controversy belonged to Murphy in his lifetime, and remained in his possession to the day of his death.

The burden of proving ownership of the horses was on the appellant. If she had proved a good title derived from some other source than Daniel J. Murphy, the facts alleged in the answer would not have constituted a defense to the action. But when she proved, as she was obliged to do in order to make title, that the horses had belonged to Daniel J. Murphy in his lifetime, then the facts alleged in the answer, and found by the court, constituted a complete defense. It was no part of the defendant's case to prove that without these horses there would be a deficiency of assets.

VAN FLEET, J., concurred in the dissenting opinion.

The following is the opinion rendered in Department Two, February 4, 1896:

HAYNES, C.—This action is in claim and delivery, brought by the plaintiff to recover from the defendant the possession of certain horses. The complaint is in the usual form, and was unverified.

The defendant in his answer first pleaded a general denial, followed by two separate defenses, the first of which alleged that Daniel J. Murphy, in his lifetime, was the owner, and in the exclusive possession of, and entitled to the possession of all said property; that he died intestate June 20, 1893; that on July 21, 1893, the defendant was duly appointed administrator of the estate of said decedent, and that the said properties "all and singular were, at the date of decedent's death, and ever since have been, and now are, a part of said estate, and defendant then took them, and has ever since held them, as part of said estate, and for the purpose of administration thereof, as administrator aforesaid, and not otherwise."

The second special defense alleged the facts above stated concerning the death of Daniel J. Murphy, and defendant's appointment as administrator, and further alleged "that said properties, all and singular were, at the date of decedent's death, and ever since have been, and are now, a part of said estate for the purpose of its administration, and for the payment of the debts of said decedent and of said estate; that defendant, as administrator and not otherwise, took said properties, and has ever since held and now holds them as part of said estate for the purpose of administration thereof as aforesaid; that the value of the personalty of said estate, including said properties, does not exceed $15,000; that the debts of said estate aggregate $90,000, and are wholly unpaid." The action was tried by the court without a jury.

The court found that the plaintiff had acquired certain of the horses from her husband, James Murphy, in

his lifetime, and these, together with their offspring, the court found she was entitled to recover, together with certain other of the horses which were purchased by defendant's intestate for the plaintiff with her funds; and that the deceased, Daniel J. Murphy, was, at the time of his death, the owner of two of said horses, known as Viva and Viva Williams.

There is no controversy here as to any of the horses above mentioned.

The fifth and sixth findings are as follows:

" 5. That on or about the twenty-fifth day of May, 1892, said Daniel J. Murphy, in settlement of his accounts with the plaintiff, sold and transferred to the plaintiff, in consideration of said settlement, certain horses in controversy in this action, namely, Carrie Malone, Danton Moultrie, Governor Pico, Clyde, Chloe Thorne, Alien, and her colt foaled in 1893.

" 6. That on and before the twenty-fifth day of May, 1892, and at the time of said sale and transfer, said Daniel J. Murphy was the sole owner of and in the sole possession and control of all said animals in his own name; that said sale was complete and valid between the parties thereto, but was not accompanied by an immediate or any delivery, or followed by an actual or continued or any change of possession of said animals, or any of them, mentioned in finding 5; but said animals remained in the sole possession of said Murphy continuously to the day of his death. That during the same period all other property of the plaintiff was in his keeping as her general manager and agent."

The court further found that Murphy died June 20, 1893; that defendant was appointed and qualified as administrator July 21, 1893; that notice to creditors had been published, but the time for the presentation of claims would not expire until May 27, 1894; that claims against decedent, aggregating, with interest, about $80,000, had been presented, allowed, and filed, and were unpaid; that the value of said estate is in personalty $14,377.75, and in realty $106,835.17. That

plaintiff had brought suit, which is still pending, in which she asserts title in herself to a portion of said realty, of the value of $17,500, and had also brought another suit, which is still pending, in which she asserts a life estate of the value of $10,000.

That, in addition to said claims allowed and filed, suits are pending for the recovery of judgments against said estate amounting to $6,000; that plaintiff had also brought suit against said administrator to recover personal property aggregrating in value $2,869; that the court had awarded to the widow of decedent the sum of $225 per month, from June 20, 1893, and also certain personalty, as exempt, of the aggregate value of $1000, and also a homestead of the value of $3000.

The court further found " that plaintiff was at the commencement of this suit, and is now, the owner of all the animals mentioned in the complaint, except Viva and Viva Williams," that she was then and is now, entitled to the possession of all except Viva and Viva Williams and those named in finding No. 5, and "that she was not then, and is not now entitled to the possession of said last-named animals."

As conclusions of law, the court found that the transfer of the animals mentioned in finding No. 5 was void as to the creditors of the decedent, that the defendant, as administrator, is entitled to retain possession of them " for the purpose of applying the same, if necessary, to the payment of the creditors of said decedent in due course of administration of said estate." Judgment was entered accordingly, and this appeal is by the plaintiff, upon the judgment-roll, from that part of the judgment which awards to the defendant the possession of the animals mentioned in finding 5, " for the purpose of applying the same, if necessary, to the payment of the creditors of said decedent in due course of administration of said estate of D. J. Murphy, deceased."

Counsel for appellant contends that the findings, so far as they relate to that portion of the judgment in-

volved in this appeal, are outside of the issues. That, as between the plaintiff and her son Daniel J. Murphy, the sale of the horses to her was good and valid, and that in order to avoid the sale, in the interest of creditors, the facts which it is claimed made such sale void as to creditors must be alleged, and could not be proved under an allegation of ownership of the decedent at the time of his death, nor under a general denial of plaintiff's ownership and right of possession.

In this contention I think that appellant is clearly right; though respondent asserts that the evidence upon which the findings were based was introduced without objection that it was inadmissible under the pleadings, and that therefore the judgment cannot be reversed upon that ground.

This controversy between counsel becomes immaterial in view of the conclusion, hereafter reached, that the findings do not support that part of the judgment appealed from.

The court found that as between the plaintiff and her son the sale was valid, and that she was the owner of the property in question, and therefore, unless other facts existed affecting the transfer or the property transferred, it could not have been part of Daniel J. Murphy's estate. The sale being valid between the plaintiff and the heirs of the deceased, to whom his estate descended, and therefore valid as against the administrator, gave him no right of possession resulting merely from his appointment and qualification as administrator, nor could he assume the existence of any facts or circumstances which, if shown to exist, might authorize him to acquire the possession by a judicial proceeding. Besides, the possession of the deceased after the sale was as the general agent of the plaintiff, and his possession was her possession. The record contains no statement or bill of exceptions, and the circumstances attending the possession by the deceased, and giving it character, are not before us, and we must therefore accept the

finding, and assume for the purposes of the case that the change of possession was not such as the statute requires.

The only authority given executors or administrators to recover, for the benefit of creditors, property conveyed or transferred by the deceased in his lifetime, is found in sections 1589 and 1590 of the Code of Civil Procedure. These sections are as follows:

"SEC. 1589. When there is a deficiency of assets in the hands of an executor or administrator, and when the decedent in his lifetime has conveyed any real estate, or any rights and interests therein, with intent to defraud his creditors, or to avoid any right, debt, or duty of any person, or has so conveyed such estate that by law the deeds or conveyances are void as against creditors, the executor or administrator must commence and prosecute to final judgment any proper action for the recovery of the same; and may recover for the benefit of the creditor all such real estate so fraudulently conveyed; and may also, for the benefit of the creditors, sue and recover all goods, chattels, rights or credits which have been so conveyed by the decedent in his lifetime, whatever may have been the manner of such fraudulent conveyance."

"SEC. 1590. No executor or administrator is bound to sue for such estate, as mentioned in the preceding section, for the benefit of the creditors, unless on application of the creditors, who must pay such part of the costs and expenses of the suit, or give such security to the executor or administrator therefor, as the court, or a judge thereof, shall direct."

Assuming (without deciding) that section 1589 of the Code of Civil Procedure applies to transfers which are void as against creditors under section 3440 of the Civil Code, as well as to transfers and conveyances made with intent to defraud creditors specified in sections 1227 and 3439 of the same code, and that an administrator is one on whom a decedent's estate, "devolves in trust for the benefit of others than himself"

(Civ. Code, secs. 3439, 3440), the facts found by the court in this case would not have authorized the administrator to have prosecuted an action to recover the property in question, and therefore do not constitute a defense to this action, or sustain the judgment appealed from.

In *Field* v. *Andrada,* 106 Cal. 107–10, it was said: "The obvious intent and meaning of this section is that two things must concur to authorize the administrator to commence an action to set aside a deed of his intestate as void against creditors: 1. There must exist creditors to be paid; and 2. There must be an insufficiency of assets in the hands of the administrator to meet their demands.   Both of these facts must coexist to bring the case within the limitations of the statute.  (*Ohm* v. *Superior Court,* 85 Cal. 545; 20 Am. St. Rep. 245.)  If there are no creditors, or, there being no creditors, the administrator has sufficient assets of the estate in his hands to meet their demands, in either case he is without power to maintain the action. . . . . It is held in *Ohm* v. *Superior Court, supra,* that to constitute a creditor within the meaning of the statute, 'he must be a creditor whose claim has been allowed by the administrator, or is evidenced by a judgment.'   (Citing *Mesmer* v. *Jenkins,* 61 Cal. 153; *McMinn* v. *Whelan,* 27 Cal. 300.)"

Under these authorities claims against the estate which have not been accepted or allowed by the administrator, or which have not been reduced to judgment, do not bring the claimants within the category of creditors; and it therefore appears from the findings that there is not a deficiency of assets in the hands of the administrator to meet the demands of creditors, and, therefore, the circumstances do not exist which would authorize a recovery against the plaintiff by the administrator.

The findings, therefore, do not support the judgment appealed from, but require a judgment for the plaintiff as to all the property except the two horses, Viva and

Viva Williams.   The statement in the eleventh finding, "that she (the plaintiff) was not then and is not now entitled to the possession of said last-named animals"— the ones here in question—is an erroneous conclusion of law from the facts precedently stated.

We, therefore, advise that that part of the judgment appealed from be reversed, with directions to the superior court to enter judgment in favor of the plaintiff for the animals mentioned in the fifth finding.

SEARLS, C., and VANCLIEF, C., concurred.

For the reasons given in the foregoing opinion the judgment awarding the defendant the possession of the animals mentioned in the fifth finding is reversed, with directions to the superior court to enter judgment upon the finding in favor of the plaintiff for the possession of said animals, or for the value thereof as found by the court in case a delivery thereof to the plaintiff cannot be had.      McFARLAND, J., HENSHAW, J., TEMPLE, J.