# FIRST NATIONAL BANK OF ROCK SPRINGS, ET AL., v. LUDVIGSEN, ADMINISTRATRIX.

STATUTORY CONSTRUCTION — CHATTEL MORTGAGES — ESTATES OF DECEDENTS — REPLEVIN — REHEARING — TRIAL.

1. While the object and policy of a statute may be resorted to in aid of its interpretation, plain and unambiguous words or phrases should not be restricted in their operation by reference to the policy of the law, unless that policy is very clearly indicated in the act itself.

2. The statute requiring the filing of chattel mortgages indicates a broader policy than that of protecting subsequent creditors only.

3. A chattel mortgage not renewed as required by law ceases to be valid as against creditors of the mortgagor who became such before as well as after default in renewal.

4. The legal effect of the statutory proceedings for the settlement of the estates of decedents is to render the property of the estate bound for the payment of debts as far as it will go.

5. The estate of a decedent being insolvent, the administrator thereof, as representative of the creditors, occupies the same position as the creditors themselves in respect to the avoidance of a chattel mortgage void for absence of filing or renewal, and is not affected by the validity of the mortgage as against decedent.

6. Since the statutes confine creditors of the estate of a decedent, in the collection of their debts, to the administration proceedings, it is not essential to the avoidance by the administrator of a chattel mortgage void for absence of filing or renewal, that the creditor shall have secured a lien by judgment or process.

7. The administrator of an insolvent estate may in a replevin suit against him, defend his possession against a chattel mortgagee by showing the invalidity of the mortgage as against creditors of the estate; and the fact of insolvency may be shown by the allowance of sufficient claims after the commencement of the suit and before trial. It is not material that the claims of creditors had not been presented or

allowed prior to the commencement of suit, the period limited therefor not having expired.

8.   The statute (R. S. 4694) authorizing actions for the recovery of property by and against executors and administrators in all cases where the same might have been maintained by or against the testator or intestate, was not intended to interfere with the rights of the creditors, and does not affect the right of the administrator of an insolvent estate to recover or defend possession of mortgaged chattels on the ground of the invalidity of the mortgage as against creditors for absence of renewal.

9.   Under Rule 14 this court may refuse to consider a point not mentioned in counsel's original brief, and raised for the first time on petition for rehearing.

10.   Where in a replevin suit the property has been delivered to the plaintiff under the writ, and the agreed statement of facts states the property "is of the value of eight hundred dollars;" *held*, that the statement is not to be confined technically to the date of the stipulation, and that its effect is not an agreement that the damages amount only to that sum; since there might be interest recoverable upon the value and also damages for detention.

[Decided April 24, 1899.  Rehearing denied July 12, 1899.  Commenced in district court March 23, 1897.]

ERROR to the District Court, Sweetwater County, Hon. DAVID H. CRAIG, Judge.

This was a suit in replevin brought by the First National Bank of Rock Springs against Mary Ludvigsen as administratrix of the estate of John Ludvigsen, deceased. The bank claimed under a chattel mortgage.  The administratrix claiming the estate to be insolvent and the mortgage void as to creditors for the failure of the mortgagee to file an affidavit of renewal, sought to defend her possession upon that ground.  The facts are sufficiently set forth in the opinion.  Judgment was rendered for defendant, and plaintiff prosecuted error.

*E. E. Enterline* and *D. A. Reavill*, for plaintiffs in error.

1. The judgment must be reversed unless it appears that there was a deficiency of assets in hands of the admin-

istratrix at the time of the commencement of the action. (Laws 1890–91, p. 287, Sub-Ch. 16, Secs. 9, 10, 11.) In the absence of a statute, the administratrix can not bring an action to vacate a fraudulent conveyance of decedent. She acquires only the title of decedent. A chattel mortgage given by decedent in his lifetime is binding upon the administratrix, although not renewed. (Jones Chat. Mort., 239; McClure v. Owers, 32 Ark., 443; Martin v. Ogden, 41 id., 186; Denny v. Faulkner, 22 Kan., 75; Recker v. Kilgore, 62 Ind., 10; Stewart v. Platt, 101 U. S., 731; Wolfe v. Perkins (Ark.), 9 S. W., 422; Bennett v. Reef (Colo.), 27 Pac., 252; Sanders v. Benlow, 21 U. S. Law. Ed., 731.) An agreed statement of facts is considered as the evidence in the case. (People ex rel. v. Dolan, 5 Wyo., 245; 167 Ill., 233.)

2. The judgment must be reversed unless the mortgage of plaintiff in error is a fraudulent conveyance, and given by decedent for the purpose of defrauding his creditors. There was no contention that the mortgage was fraudulent. (Murphy v. Clayton (Cal.), 43 Pac., 613; Threlkel v. Scott (Cal.), 26 id., 879.) Only such creditors can complain of the mortgagee's failure to file or renew a chattel mortgage as were injured by the neglect. (Jones Ch. Mort., 239, 245; Root v. Harl, 62 Mich., 420; Brown v. Brabb, 67 id., 17; Watson v. Mead, 98 id., 330; Bank v. Oium, 3 N. D., 193; Barton v. Sitlington (Mo.), 30 S. W., 514; Forrester v. Bank (Neb.), 68 N. W., 1059.)

3. The judgment must be reversed unless the creditors represented by the administratrix presented their claims to her, and they were allowed, prior to the commencement of the action. (Ohm v. Superior Court, 85 Cal., 545; Field v. Andrada, 106 id., 107; Murphy v. Clayton, 114 id., 526; Estes v. Wilcox, 67 N. Y., 364; O'Connor v. Boylan, 49 Mich., 209; Fletcher v. Holmes, 40 Me., 364; Graham Button Co. v. Speilman, 50 N. J. Eq., 120; Rutherford v. Alyea (N. J.), 34 Atl., 1078.)

The gist of replevin is the right to possession at the

commencement of the action. (R. S., 1887, Sec. 3032; Cobbey on Replevin, 979, 1049, 1053.) At the commencement of this action there was no deficiency of assets, as there were no creditors at that time (claims not having been presented and allowed), and the property had not been fraudulently conveyed.

*John H. Chiles*, for defendant in error.

Where a chattel mortgage has not been filed or renewed as required by the chattel act, and the mortgagor dies in possession, leaving an insolvent estate, the delinquent mortgagee can not enforce the mortgage against the personal representative of the deceased mortgagor who has succeeded to the possession of the property. (Wilson v. Leslie, 20 O., 161; Kilbourn v. Fay, 29 O. St., 264; Forrester v. Bank, 68 N. W., 1059; Laws 1890–91, p..87, Sec. 5, p. 89, Sec. 11; Becker v. Anderson, 11 Neb., 493; Schouler, Ex'r and Adm'r, 239; 7 Ency. L., 231–33; Laws 1890–91, p. 274, Sec. 1, Ch. 15; id., p. 285, Ch. 16, Sec. 1; Currie v. Knight, 34 N. J. Eq., 485; Kater v. Steinruck, 40 Pa., 501; 50 N. J. Eq., 120; Kelly v. Murphy, 12 Pac., 467 (Cal.); Hunt v. Butterworth, 21 Tex., 133; Cobbey Ch. Mort. 998; Tiedeman on Sales, 240; Wait on Fraud. Conv., 184; Babcock v. Booth, 2 Hill, 181; Bank v. Salyer (Okla.), 50 Pac., 76; Murphy v. Clayton, 46 Pac., 460.)

Replevin does not lie in this case. (Laws 1890–91, p. 285, Ch. 16, Sec. 1; 1 Woerner Adm., 148; State v. R. R. Co., 10 Nev., 47; Gignon v. Astor, 2 How., 319; Day v. Mignon, 18 Wall., 156; Dickey v. Vann, 81 Ala., 425; Cobbey on Replevin, 299–332; Lemp v. Fullerton, 13 L. R. A., 408; O'Keefe v. Foster, 5 Wyo., 343; Bank v. Charles, 86 Cal., 322; Alex. & Joseph Pro. L. & Pr., 242.)

POTTER, CHIEF JUSTICE.

This is a replevin suit in which The First National Bank of Rock Springs claims to be entitled to the posses-

sion of certain personal property by virtue of a chattel mortgage executed and delivered to it by one John Ludvigsen in his lifetime to secure the payment of the sum of $880 and interest. The *bona fides* of that indebtedness, and that it was due and unpaid at the commencement of this suit, is conceded.

The mortgage contained a provision permitting the mortgagor to remain in possession of the property, but authorized the mortgagee to take possession in case of default in any of the mortgage conditions. The mortgagor retained possession until his death on November 19, 1896. It then passed into the possession of the defendant in error as administratrix of his estate; letters of administration being issued to her on December 14, 1896. The suit was brought March 23, 1897, and the bank secured possession of the property under the writ and upon the execution of the statutory undertaking. The estate of the decedent mortgagor is conceded to be insolvent, and to have been so insolvent at the time of his death.

The administratrix defends in the right of the creditors, and seeks to hold the property that it may be subjected to the payment of the debts of the estate. She assails the validity of the mortgage as against the creditors of the decedent on account of the failure of the mortgagee to file the statutory affidavit of renewal. It is admitted that no affidavit was filed, and that the statutory time therefor had expired prior to the decease of the mortgagor. When the suit was instituted no claims had been formally presented against the estate except a claim of the administratrix for money advanced for funeral expenses; but afterward and before trial claims aggregating four thousand dollars had been regularly presented and allowed. One thousand dollars of such claims represent indebtedness incurred by the mortgagor prior to the date of the mortgage, and the remainder represents claims incurred subsequent to the execution of the mortgage, but prior to the default in the filing of a renewal affidavit. The mortgage was duly filed as required by statute on the

day of its date. The value of the property is conceded to be $800.

The action was heard and determined upon an agreed statement of facts. The defendant in error was adjudged to be entitled to the possession, and her damages were assessed at $872.41, for which, with costs, judgment was rendered in her favor and against the plaintiff and its sureties. The latter prosecute error.

Although it is conceded that the time arrived and expired for the filing of an affidavit which the statute requires in order to continue the validity of a chattel mortgage as against creditors of the mortgagor, and that the mortgagee defaulted therein, it is nevertheless insisted that the term " creditors " as used in the statute does not comprehend antecedent creditors. This is thought to follow from the intent and policy of the law which counsel esteems to be protection to those who may deal with the mortgagor under the belief that his personal property is unincumbered.

The chattel mortgage act provides that every mortgage of personal property which shall not be accompanied by immediate delivery and be followed by an actual and continued change of possession of the mortgaged property "shall be absolutely void as against the creditors of the mortgagor, and as against subsequent mortgagees or purchasers in good faith," unless said mortgage shall be filed as therein required. Laws 1890–91, Ch. 7, Sec. 5. It is further provided that such mortgage so filed shall remain in full force and validity for the term for which it shall be given, and for sixty days thereafter, and that it "shall cease to be valid as against the creditors of the person making the same, and as against subsequent purchasers or mortgagees in good faith," after the expiration of said sixty days, unless before such expiration notice of foreclosure shall be given, or the mortgagee, his heirs or legal representatives or assigns, or the agent or attorney of the mortgagee or his assigns, shall make an affidavit exhibiting the interest of the owner and holder in such mortgage

and the amount yet due and unpaid of the money it may have been given to secure. This affidavit is required to be filed in all respects as the original mortgage. When so made and filed, the mortgage continues in force for one year after the term for which it was originally given; and a like affidavit may be filed within thirty days next preceding the expiration of that year, which will continue the mortgage in force for another year; and within the same limitations and under the same conditions, a like affidavit may be filed to renew the mortgage for each succeeding year thereafter, until the debt secured shall be fully paid. Sec. 11. It is valid between the parties until the debt is fully paid, although neither filed nor renewed. Sec. 10.

It is to be observed that nothing in the act qualifies or limits the term " creditors." Upon a literal construction the term embraces all creditors, antecedent as well as subsequent. A mortgage not filed as provided in the act is absolutely void " as against creditors of the mortgagor." One not renewed as required by the provisions of Section 11 ceases to be valid "as against the creditors of the person making the same." The language seems to be plain and unequivocal. It is claimed, however, that when the statute is interpreted in the light of its object and policy, antecedent creditors must be excluded from its protection, as they could not be misled either by a failure to file or renew a subsequent mortgage, or to renew one already existing.

It is true that the object and policy of a statute may be resorted to in aid of interpretation. But when plain and unambiguous words or phrases are employed in an act, they should not be restricted in their operation by reference to the policy of the law, unless that policy is very clearly indicated in the act itself.

A noticeable distinction is made in the statute between creditors on the one hand and purchasers and mortgagees on the other. To render such distinction entirely clear, a repetition of words is employed. Both in Section 5 and in Section 11 the language is, " as against the creditors,"

followed by, "and as against subsequent purchasers or mortgagees." Evidently the same class of creditors are intended to be and are covered in both sections. The word "subsequent" was not used to designate the protected creditors in either instance.

No doubt one of the objects of the statute was to protect persons extending credit to the mortgagor relying upon the freedom of his property from incumbrance as disclosed by the records; but we think the statute gives evidence of a broader policy than that so far as creditors are concerned. As was said in a leading and ably considered case in New York: "It is impossible to say that only creditors who became such during the existence of the mortgage may be injured by keeping the mortgage secret. It certainly is not improbable that in many cases antecedent creditors may be lulled into security and forbear the collection of their debts at maturity, by the apparent unincumbered possession and ownership by the debtor of property covered by an undisclosed mortgage." Karst v. Gane, 136 N. Y., 316.

There are numerous cases decided under similarly worded statutes holding that the notice which will subordinate a subsequent chattel mortgage to a prior one unfiled, is not applicable to general creditors; and we believe that proposition to be well settled. A person accepting such a mortgage with notice of an existing one, although the latter has been withheld from record, is not a mortgagee in good faith, and is therefore not protected against the prior incumbrance. A creditor on the other hand is generally, at least, protected notwithstanding that he may have had similar notice. The cases announcing such a doctrine certainly do not restrict the policy of the statute to those creditors only who may have been misled by the silence of the public records. Sayre v. Hewes, 32 N. J. Eq., 652; Farmers L. & T. Co. v. Hendrickson, 25 Barb., 484; W. W. Kimball Co. v. Kirby, 4 S. D., 152; Am. Loan & T. Co. v. Olympia L. & P. Co., 72 Fed., 620.

The decided weight of authority upon the question of

the interpretation to be accorded the term creditors in our
chattel mortgage statute is against the contention of coun-
sel for plaintiffs in error and sustains the position that
antecedent creditors are within the meaning and protec-
tion of the statute.    Karst v. Gane, supra; Campbell v.
Richardson (Okla.), 51 Pac., 659; Williamson v. N. J.
So. R. R. Co., 29 N. J. Eq., 311, 336; Roe v. Meding,
53 N. J. Eq., 350; Nat'l Shoe & L. Bank v. August, 54
N. J. Eq., 182; Clarkson v. McMaster, 25 Canada Sup.
Court, 96; Withrow v. Citizens Bank, 55 Kan., 378;
Huber Mfg. Co. v. Sweny, 57 O. St., 169; Ledoux v.
East River Silk Co., 19 N. Y. Misc., 440; Farmers L. &
T. Co. v. Baker, 20 id., 387.

There are cases to the contrary, and counsel relies prin-
cipally upon Brown v. Brabb, 67 Mich., 17, and Bank v.
Oium, 3 N. D., 193.    The question is discussed with
much ability in both of those cases, and they are from
courts which are entitled to our highest respect; but we are
not convinced by their reasoning.    It seems to us unsound
when attempted to be applied to a statute framed like our
own with evident care, and by the employment of such
language as is contemplated to relieve the legislative pur-
pose from any doubt.    The learned court in Bank v.
Oium, supra, regards as anomalous the proposition that
had the creditor accepted a mortgage as security for the
payment of his debt, the unfiled mortgage would have
constituted a superior lien, but that by refusing the mort-
gage he may attach and hold his lien as against such prior
unfiled mortgage.    We perceive no anomaly in the situa-
tion.    A very natural distinction occurs to us between the
creditor in such case with and without a mortgage.    When
he accepts a mortgage, he deals with the mortgagor, and
has secured an interest in the property by the positive act
of one who has already transferred an interest to another,
and the creditor with notice so taking a mortgage is in a
very different position from one who obtains his rights
by the operation and by means of the machinery of the
law, and upon whom, therefore, no duty rests to respect

the obligations of the owner as a mortgagor to his mortgagee. In the former case the lien is secured not by the act of the law, but that of the mortgagor. Volckers v. Lieber, 18 N. Y. Misc., 457.

In Williamson v. Railroad, 29 N. J. Eq., 336, the court said, "There is a distinction made in the statute between the creditors of the mortgagor and subsequent purchasers and mortgagees, with respect to the avoidance of the mortgage for neglect to file the same, or to take immediate possession. Purchasers or mortgagees, in order to take advantage of the failure of another mortgagee of chattels to comply with the statute, must be subsequent purchasers or mortgagees, taking their title under the mortgagor in good faith." * * * "But no such qualifications apply as against the creditors of the mortgagor. Their rights may have accrued prior or subsequent to the mortgage, and yet they will be entitled to the benefit of the statute."

In Stephens v. Perrine, 143 N. Y., 476, Mr. Justice Peckham, in delivering the opinion of the court, said, "The failure to file the mortgage, there being no change of possession of the property mortgaged, rendered it void as against creditors then existing."

In the cases above cited the controversies arose out of a failure to file the original mortgage, but they are apt and in point, as it is clear that creditors are alluded to in the same sense in both sections of the statute — that with reference to filing, and also that covering the renewal. The mortgage involved in the case at bar was filed, but not renewed. In addition to the authorities already referred to, the following uphold the right of prior creditors to take advantage of a default in filing a renewal affidavit. Thompson v. Van Vechten, 27 N. Y., 568; Newman v. Tymesen, 12 Wis., 448; Lowe v. Wing, 56 Wis., 31; Nix v. Wiswell, 84 Wis., 334; Burchinell v. Gorsline (Colo.), 52 Pac., 413; Farmers L. & T. Co. v. Baker, 20 N. Y. Misc.. 387; Huber Mfg. Co. v. Sweny, 57 O. St., 169.

If none is filed, the mortgage ceases to be valid "as against creditors of the person making the same." Antecedent creditors are included in that designation. Neither the policy nor object of the statute, as disclosed in its terms, requires or authorizes their exclusion.

A recent decision in Nebraska has come to our notice which apparently announces a contrary doctrine, but in that case the creditor had put himself in the position of a purchaser, and the cases cited in support of the court's statement were from Kansas and Wisconsin, both of which concerned subsequent purchasers and not creditors. Arlington M. & E. Co. v. Yates, 77 N. W., 677.

We are of the opinion that a chattel mortgage not renewed as required by law ceases to be valid as against creditors of the mortgagor, who became such before as well as after the default in renewal.

This being so, are the creditors of the Ludvigsen estate in a position to take advantage of the failure on the part of the mortgagee to file the affidavit; and can the administratrix, in this case, urge the invalidity of the mortgage as against creditors in defense of her possession?

Counsel for plaintiffs in error contend that the only authority conferred upon an administrator to avoid a conveyance of the decedent is to be found in Sections 9, 10, and 11, of Chapter 16, of the act concerning probate procedure. Laws 1890–91, page 287. Section 9 provides that when there is a deficiency of assets, and when the decedent, in his lifetime, has conveyed any real estate, or any right or interest therein, with intent to defraud his creditors, or has so conveyed such estate that by law the deeds or conveyances are void as against creditors, the executor or administrator must commence and prosecute to final judgment any proper action for the recovery of the same, and may recover for the benefit of the creditors all such real estate so fraudulently conveyed; "and may also for the benefit of the creditors sue and recover all goods, chattels, rights, or credits which have been so conveyed by the decedent in his lifetime, whatever may have been the manner of such fraudulent conveyance."

Section 10 provides that the executor or administrator is not bound to sue for such estate unless on application of creditors, who must pay such part of the costs and expenses of the suit, or give security therefor as the court or judge shall direct. Section 11 directs that the proceeds of all goods and chattels, rights and credits so recovered shall be appropriated in payment of debts of the decedent in the same manner as other property in the hands of the executor or administrator.

It is contended that there was no deficiency of assets at the commencement of the suit, as none of those who were creditors of the decedent in his lifetime had then filed their claims, and none had been allowed; and that the creditors referred to in said sections are those whose claims have been presented and allowed. It is supposed to follow from the inability of the administratrix to institute a suit to avoid a fraudulent conveyance in the absence of sufficient allowed claims to show a deficiency of assets, that she can not hold personal property as against a fraudulent vendee, or successfully defend his suit for the recovery thereof unless at the time the vendee begins the assertion of his alleged rights, a deficiency of assets is shown by reference to claims already allowed. It is also contended that the aforesaid Sections of the probate act apply only to cases where a fraudulent intent on the part of the grantor existed at the time of the conveyance.

As a general rule an administrator acquires no better title than the decedent had. It is also true as a general rule that without judgment or other legal process, or without a right by law to have the property of his debtor seized and sold for his benefit, a creditor is not in a position to assert his rights against a mortgage which is void as to creditors. He is not permitted to assail or question the validity of the mortgage until by judicial process or in some manner recognized by law the property has become bound for the payment of his debt, or as one court has expressed it, until his debt is fastened on the debtor's property " by law, judicial process, or in some other way; for until his debt is so fastened, he has

no right to or interest in his debtor's property, and can not ask the court to control its disposition, nor can he prevent the debtor from exercising full and complete dominion over it." Graham Button Co. v. Spielman, 50 N. J. Eq., 120.

The question then arises whether the facts of this case place the creditors concerned in a position, or the administratrix as representing them or their interests, to assert any right to the property in controversy in opposition to the mortgage.

It is the duty of an executor or administrator to take into his possession all the estate of the decedent, real and personal, and to collect all debts due to the decedent or to the estate. Laws 1890–91, Ch. 70, Sub. Ch. 16, Sec. 1. All the property of the decedent becomes chargeable with his debts, and the same may be sold under the direction of the court or judge, in the manner prescribed by law; and there is no priority between personal and real property for that purpose. Id., Sub. Ch. 15, Sec. 1. If an action is pending against the decedent at the time of his death, the claim upon which the action is brought must be presented for allowance in the same manner as other claims, and no recovery can be had in the action unless proof is made of the required presentation. Id., Sub. Ch. 14, Sec. 11. A judgment rendered against an executor or administrator, upon any claim for money against the estate of his testator or intestate, only establishes the claim in the same manner as if it had been allowed by the executor, administrator, and judge; and the judgment must be that the executor or administrator pay the amount ascertained to be due, in the due course of administration. Id., Sec. 13. An execution can not issue upon the judgment, nor does it create any lien upon the property of the estate, or give to the judgment creditor any priority of payment. Id. A judgment rendered against the decedent in his lifetime must likewise be presented for allowance, and no execution can issue thereon after his death, unless it be for the recovery of real or

personal property, or the enforcement of a lien thereon.
Sec. 14. A judgment rendered against a decedent, dying
after verdict or decision on an issue of fact, but before
judgment, is not a lien on the real property of the dece-
dent, but is payable in due course of administration.
Sec. 15. All demands against an estate of a deceased
person are divided into certain classes, six in number, and
no creditor of one class is permitted to receive payment
until all those of the preceding classes are fully paid. If
the estate is insufficient to pay all the debts of any one
class, each creditor must be paid a dividend in proportion
to his claim. Sub. Ch. 17, Secs. 21, 23. The court is
charged with the duty of making orders for the payment
of the debts, as the circumstances may require; and if
there are not sufficient funds to pay all the debts, the
court must in the order specify the sum to be paid to
each creditor. Id., Sec. 25.

No action is permissible upon any claim against an
estate unless it is first presented; except that the holder of
a mortgage or lien may bring an action to enforce the
same against the property subject thereto, where all re-
course against the property of the estate is expressly
waived in the petition. Id., Sub. Ch. 14, Sec. 9.
Claims are required to be presented within the time lim-
ited by statute, or they become forever barred. Id.,
Sec. 1. The executor or administrator is entitled to the
possession of all real and personal estate of the dece-
dent. He is required to indorse upon claims presented to
him his allowance or rejection. If rejected, suit may be
instituted within a time limited by statute, but as afore-
said the judgment in such suit will establish only the cor-
rectness of the claim.

From these provisions it is apparent that a creditor after
the death of his debtor is prevented from securing through
legal process a specific lien upon his property; but the
entire property of the estate becomes chargeable with the
debts, funeral expenses, family allowances, and expenses
of administration. The rights and interests of the cred-

itors are to be determined and satisfied in the administration proceedings in the court. The court having jurisdiction thereof is the district court, which is a court of record and also of general jurisdiction. The legal effect of the statutory provisions seems clearly to be to render the property of the estate bound for the payment of debts, so far as it will go. The Supreme Court of Errors in Connecticut in considering an application of a receiver of an insolvent corporation to have determined the rights of certain creditors who as conditional vendors claimed title to certain machinery in the receiver's possession, and in determining the rights of the general creditors as against such conditional contracts which were void as to creditors, but good as to the corporation, and therefore as contended against the receiver, held that the receiver was not alone the representative of the corporation, but also of the creditors, and respecting the right of the general creditors and their representative, the receiver, to question the conditional sales, said:

"By the appointment of a receiver the rights of creditors to attach or levy upon such property are suspended. The law thus disables the creditors from interfering with the property, or from in any way appropriating it for their sole benefit; but in so doing it does not lessen their rights with respect to such property, nor does it destroy them; it merely provides for their protection and enforcement in another way. And whenever the law thus disables creditors from helping themselves, whether by proceedings in bankruptcy or insolvency, or by the appointment of a receiver or otherwise, it provides for the enforcement of whatever rights they may possess against the property of the debtor, through the instrumentality of its agent, the trustee, assignee, or receiver. For the purpose of enforcing any such right which the creditor could have enforced for his sole advantage, and for the purpose of holding or taking any property which a creditor could hold or take by law, or for recovering back any prop-

erty of which a creditor could avail himself in payment of his debt, the trustee, assignee, or receiver is in effect the creditor." * * *   " It is of no importance, so far as the present discussion is concerned, whether such agent of the law takes the technical title to the debtor's property, or takes only the possession of it; in either case he is the sole agent through whom, and through whom alone, as a general rule, the rights of creditors can be protected and enforced, and in protecting and enforcing those rights he is the representative of the creditors, and not of the debtor."   In re Wilcox & Howe Co., 70 Conn., 220.

In Graham Button Co. v. Spielman, 50 N. J. Eq., 120, where the contest was between the holder of a chattel mortgage void as to creditors and a receiver of the corporation mortgagor, the court held that the moment the corporation was adjudged to be insolvent and a receiver appointed to wind up its affairs, the legal effect of the statute which regulated such matters was to fasten the debts of the corporation upon its property.   The court said, " From that time forth its property is, by law, appropriated exclusively and irrevocably to the payment of its debts.   Power is conferred upon its receiver to take possession of all its property and convert it into money, to the end that the money thus obtained may be distributed among its creditors.   No other application or disposition can be made of the money realized from its property.   It must be paid to creditors, and in distributing it among unsecured creditors, the statutory direction is that they must be paid in proportion to their respective debts.   By an enactment expressed in this form, the debts of an insolvent corporation are, in my judgment, just as plainly and effectually fastened on its property as they would have been had the statute said, in direct terms, that when a corporation is adjudged to be insolvent its property shall at once become liable for the payment of its debts.   A legislative declaration, in the form just stated, has been

held sufficient to fasten the debt of a creditor at large on the lands of his deceased debtor." Haston v. Castner, 4 Stew. Eq., 697.

In connection with the above statement, quoted from the decision of Graham Button Co. v. Spielman, it will be observed that our statute declares that all property of the decedent shall be chargeable with his debts.

While there are occasional decisions to the contrary, the clear weight of authority sustains the right of an assignee or receiver in insolvency to avoid a chattel mortgage on the ground of its invalidity as against creditors for non-compliance with statutory regulations. Farmers L. & T. Co. v. Minneapolis E. & M. Works, 35 Minn., 543; Stephens v. Perrine, 143 N. Y., 476; Farmers L. & T. Co. v. Baker, 20 N. Y. Misc., 387; Roe v. Meding, 53 N. J. Eq., 350; Norris v. Ellis, 16 Ind. App., 679; Withrow v. Citizens Bank, 55 Kan., 378; First National Bank v. Salyer (Okla.), 50 Pac., 77; Ruggles v. Cannedy (Cal.), 53 Pac., 911; Hanes v. Tiffany, 25 O. St., 552; Putnam v. Reynolds, 44 Mich., 113.

In Withrow v. Citizens Bank, supra, the court said, "The statute declares the unrecorded mortgage void as against the creditors. It is therefore void as against an assignee who is the representative of all of them."

In the cases maintaining this doctrine, in the case of an assignee, the decisions, generally at least, rest upon the fact that the assignment is controlled and regulated by statute, and the assignee administers the trust under the direction of the court for the benefit of all creditors, thus distinguishing them from the case of an assignee under a common law assignment; the common law denying to such an assignee any better standing than his assignor had. Judge Cooley, however, suggests another distinction which arises between a mortgagee whose invalidity arises from the fraud of the mortgagor and one becoming void by the neglect of the mortgagee, and in this connection he says: "The assignee is not a purchaser for value, and not a creditor; and even creditors, it is said, can not

attack the mortgage except indirectly through a seizure of the property by attachment or other suitable process. This is doubtless true where the invalidity of the mortgage arises from the fraud of the mortgagor, but whether the same rule will apply when the mortgage was originally valid, but is made void by the neglect of the mortgagee, may well be questioned. It would be easy to suggest weighty considerations arising in such cases, but not existing in the case of a fraudulent mortgage, and which it might well be thought should control." Putnam v. Reynolds, supra.

We are not considering the case of an assignee, and whether or not under our statute regulating voluntary assignments an assignee would possess the right as representative of the creditors to assail a mortgage void for want of filing or renewal is a question not before us, and is not decided. The cases cited upon this point, however, are persuasive, to say the least, upon the question which is before us, as the right of the assignee to attack such a mortgage has been determined upon principles clearly applicable to this controversy, and our statutes governing the administration of estates of decedents. The precise question under consideration has been passed on in at least three cases, and it has been held that an administrator as a representative of the creditors of the estate occupies the same position as the creditors themselves in respect to the avoidance of a mortgage void because not filed or renewed. Currie v. Knight, 34 N. J. Eq., 485; Kilbourn v. Fay, 29 O. St., 264; Becker v. Anderson, 11 Neb., 493; see also, Bueckler v. Gloninger, 2 Watts, 226; McLean v. Weeks, 61 Me., 277.

In an able and exhaustive opinion the court in Kilbourn v. Fay, supra, held that where a chattel mortgage is declared void by statute as against the creditors of the mortgagor, and the mortgagor dies in possession of the mortgaged property, leaving an insolvent estate, such property becomes assets in the hands of the executor or administrator of the mortgagor, whose duty as well as

right it is to defend his possession against the claim of the mortgagee notwithstanding such mortgage was valid as against the mortgagor. The statutes of Ohio did not contain as many provisions as are found in our own declaring and emphasizing the principle that the claims of all creditors are to be satisfied out of the estate through the course of administration provided for by law, but under their statute all goods and chattels were to be deemed assets to be administered by the personal representative, and the proceeds thereof were to be applied to the payment of debts in a certain order of preference. In the course of the opinion the court said:

"The creditors of a mortgagor do not cease to be such by his death; and so long as they continue to be such creditors such mortgage is void as against them. By relation, the executor or administrator of the mortgagor became trustee for the creditors from the death of the mortgagor."

The action in that case was brought to enforce a chattel mortgage lien upon property in the possession of an executor.

In New Jersey the statute declared that in case the estate of a testator or intestate should be insufficient to pay all his debts, the same should after the satisfaction of certain preferred debts, be distributed ratably among his creditors. It was also provided that no execution should issue upon a judgment recovered against the executor or administrator of an insolvent estate. It was held that the fundamental purpose of the statute was to appropriate exclusively and irrevocably the property of a decedent to pay his debts, and that creditors at large of an insolvent estate could challenge the validity as to them of a chattel mortgage, and at the suit of such creditors a sale under the mortgage was enjoined.

Our own court has decided that a general creditor has sufficient interest in the estate of a decedent to inquire into the legality of the proceedings leading up to a judgment against the administrator, and the judgment itself,

as such general creditor is directly interested in the distribution of the assets of the estate.    O' Keefe v. Foster, 5 Wyo., 343.

A similar decision in New Jersey, Milnor v. Milnor, 4 Halst., 93, was referred to in Currie v. Knight as supporting the proposition announced in that case.

In none of the cases cited involving the right of an assignee, receiver, or representative of the insolvent estate of the decedent was the fact deemed material that the creditors had not secured a specific lien by judgment or process.    There could be no specific lien, because by the operation of law the creditors were denied a remedy of that character; but their rights were provided for in other ways just as completely, and under forms of law just as legal, with the exception that every creditor stood upon the same footing, and no individual creditor could by the exercise of diligence appropriate the property to his sole advantage.

In Ruggles v. Cannedy, supra, the California court alluded to the fact that the creditors had not obtained judgments against the mortgagor nor instituted proceedings therefor at the time he was adjudged insolvent, and remarked that after that time they were by force of the insolvency act prevented from resorting to any proceedings in law or equity for such purpose, and were limited to the presentation of claims to the insolvency court. They did that, and the court held that while not in strictness a judgment, the allowance of a claim had much the same force and effect, and amounted to the only thing in the nature of a judgment which the creditors so situated could obtain; and was equivalent to a judgment for the purpose of enforcing their rights against fraudulent or void acts of the insolvent.

The cases thus maintaining the right of an assignee, receiver and executor, or administrator of an insolvent estate, as representing the general creditors, to avoid in their interest a fraudulent or void chattel mortgage, we think correctly present the law upon the question. The

doctrine is supported by sound reason and comports with our ideas of justice in the premises. The mortgage is without validity as to the creditors. As against them, it is no mortgage and represents no interest in the property. Possibly they might, and especially if the administrator should refuse to act, institute proceedings in their own behalf to require the property or its proceeds to be devoted to the purposes of the administration of the estate.

We are convinced that the administratrix represents the creditors of this insolvent estate, and as such representative is not affected by the fact that the mortgage was valid against the decedent. Our statutes confine the creditors in the collection of their debts to the administration proceedings. The theory that the administrator represents the creditors, affords the only reason for the provisions heretofore referred to relative to the cancellation of void or fraudulent conveyances.

As no affidavit of renewal was filed and no notice of foreclosure given, the mortgage was void as against the creditors of the mortgagor.

We come now to consider the effect which should be given the fact that none of the creditors of the decedent had presented their claims and secured the allowance thereof prior to the commencement of the action.

It may be that Section 9 of Sub-Chapter 16 of the probate act applies only to such conveyances made by the decedent as were void or fraudulent at the inception of the conveyance. Such seems to have been the view in California, from which State the probate chapter was taken. Threlkel v. Scott, 89 Cal., 351. Although in Murphy v. Clayton, 114 Cal., 526; 43 Pac., 613, that court assumed, for the purposes of the case, without deciding, that it applied to transfers void as to creditors under other statutory provisions. In adopting the section which was borrowed entire from the California statutes, the prior construction thereof by the courts of that State were under a familiar rule of construction also adopted. In Ohm v. Superior Court, 85 Cal., 545, decided September 10,

1890, a few months anterior to the enactment of the law in this State, in a case where a creditor of an estate filed a petition asking for an order directing the administratrix to allow her name to be used in an action to be brought to set aside an alleged fraudulent conveyance of the decedent, the order was made as prayed for and the administratrix took the case to the Supreme Court. The creditor filing the petition had in due time presented her claim, which was rejected by the administratrix, and suit was brought thereon which was still pending when the original case above cited was decided. The court held that the administratrix had no right to bring an action to set aside a deed of her intestate void as to creditors unless there is a deficiency of assets, and there are creditors for whose benefit the property so recovered must be sold; and that to constitute one such a creditor his claim must have been allowed by the administrator or evidenced by a judgment. This holding was followed in Field v. Andrada, 106 Cal., 107, and it was said: "The obvious intent and meaning of this section is that two things must occur to authorize the administrator to commence an action to set aside a deed of his intestate as void as against creditors: 1. There must exist creditors to be paid; and 2. There must be an insufficiency of assets in the hands of the administrator to meet their demands. Both of these facts must co-exist to bring the case within the limitations of the statute."

To the extent of the decision in Ohm v. Superior Court, supra, we must consider ourselves bound by the construction placed upon the statute. We are the more willing to accept that construction as we agree with it. Evidently one is not a creditor until his claim is allowed or judgment obtained within the meaning of Section 10 which relieves the administrator of the duty to bring the action unless application therefor is made by creditors.

In the case of Murphy v. Clayton, 114 Cal., 526; 43 Pac., 613; 46 Pac., 460, an action was brought to recover possession of personal property from an adminis-

trator by one who claimed them by purchase from the decedent in his lifetime. As to some of the property the trial court found the transfer to have been void as to creditors. The court also found that the time for the presentation of claims against the estate had not expired, but that a certain amount of claims had been allowed; as to others, suits were pending, and as to certain property, suits were also pending which, if successful, would reduce the value of the estate subject to the payment of debts. Upon the findings, however, it was not disclosed that the estate was clearly shown to be insolvent, and there was no direct finding of insolvency. Judgment for the administrator was reversed, the supreme court holding that if the administrator would not have been authorized to prosecute an action to recover the property upon the facts as shown under the decisions in Field v. Andrada and Ohm v. Superior Court, supra, such facts would not constitute a defense to the action brought by the alleged fraudulent vendee to recover it from the administrator. This case was decided in 1896, and is therefore not controlling, even if in point, unless it appeals to our judgment as sound, and based upon satisfactory reasoning. Chief Justice Beatty and Mr. Justice Van Fleet dissented. The dissenting justices repudiated the proposition that if the administrator could not sue he was in no position to defend; and said, in substance, that when he has property in his possession which was in the possession of the intestate at the time of his death, it is his duty to retain it until it appears that it will not be needed; and that the position of the party attempting to deprive the administrator of assets is no better than that of an heir with respect to unsold property of the estate. That it is his, if not needed for the payment of debts, and like the heir, he should wait until that fact is ascertained. But the case is distinguishable from the case at bar; and from all that was said in the prevailing opinion, it does not follow that upon the facts before us the California court would deem the case controlling. There, upon the trial,

the insolvency of the estate was not established. For all that appeared it may not have been insolvent. In the present contest, it is admitted that the estate was insolvent, and was so insolvent at the time of the death of the decedent. Enough claims had been allowed before trial, although subsequent to the commencement of suit, to conclusively prove the fact of such insolvency. The value of the estate is not mentioned in the agreed statement, but it is alleged therein and agreed that the property of the estate, including that in controversy, is not sufficient to pay the debts.

In Kilbourn v. Fay, supra, the court said, " It is one thing for the representative of an estate to pursue, by action at law, the fraudulent vendee of the deceased fraudulent debtor for the recovery of goods fraudulently transferred; while it is quite a different thing for such executor in possession to defend, for the sole benefit of creditors, such possession against a claim which by statute is declared absolutely void as against creditors."

In Field v. Andrada, supra, the denial of the right of the administrator to maintain the action was based upon the allegations of the complaint, which were in substance that the time for the presentation of claims had not expired, and the plaintiff was informed and believed that there were creditors whose claims had not yet been presented, and the amounts thereof were unknown to the plaintiff. It was held that the demurrer to the complaint should have been sustained.

It is not necessary that we decide whether if at the trial it had not appeared that by reference to the claims then allowed, the estate was insolvent, the administratrix would have been entitled to prevail in the action, nor to hold that she would have had the right to the possession until the expiration of the period for the presentation of claims.

Sufficient claims had been presented before trial, and the estate was shown, or rather admitted, to be insolvent.

We are not unaware of the principle that under our

statutes in a case of this character the respective rights of the parties are to be determined as at the commencement of the suit.

The facts upon which the right of the administratrix to retain possession of the property from the mortgagee depended was that the estate was insolvent, and the property was needed to pay debts. That fact, as admitted and shown by the agreed statement, existed at the commencement of the suit. It is true that the fact was not ascertained in a conclusive manner, nor so as to be considered by the courts in a legal proceeding, until the claims were presented and allowed; but when so allowed they furnished evidence upon the fact of insolvency existing at the time that the action was brought.

No doubt a creditor without judgment or process in case of a living mortgagor, or without an allowed claim, or one established by judgment, in case of a deceased mortgagor, is not in a position to attack a void mortgage; and had Ludvigsen in his lifetime, before the creditors had obtained judgment and execution, or any lien on the property, made a bona fide transfer of the property to the mortgagee in payment of the mortgage, the remedy of the creditors would have been defeated. The administratrix, however, in view of her duties and responsibilities, and the fiduciary nature of her office, could not act with the freedom of her intestate, and transfer the property to the mortgagee liberated from all claims and remedies of creditors. The bank does not put forth a claim of absolute title, but asserts a partial ownership — a lien by mortgage. Herein also his case differs from the facts in Murphy v. Clayton, supra. The determination of the right of the mortgagee to the property, if asserted in the administration proceedings, for example, in the course of distribution of the proceeds of the estate among creditors, and a preference under Sections 21 and 22, Sub-Chapter 17, should be claimed for the mortgagee, would involve the rights of all parties, creditors, legatees, and heirs. The court, in such a proceeding, would certainly not

award a preference to the mortgagee in advance of the time or expiration of the time for filing claims on the ground that at the time of the application sufficient claims had not been allowed to indicate insolvency.

Had the mortgagee brought suit of foreclosure, and at the trial it was shown by the administratrix in defense what is shown in this case, the mortgage being void as to creditors, it will hardly be contended, having regard to the representative character as to creditors of the administratrix, that a decree could be properly entered foreclosing the mortgage for the benefit of the mortgagee. It would in such case have made no difference that the claims of the creditors had not been allowed until after the institution of the suit.

Does not the case at bar have the same effect as an action to foreclose? The mortgagee is entitled to possession, if at all, for but one purpose; and that is to foreclose the mortgage by a sale of the property. If the mortgage is void as to the creditors of this estate, and we hold that it is; if the administratrix represents the creditors and can assail the mortgage as such representative, and we hold that she can, then the judgment awarding the right of possession to the mortgagee, on the ground that at the commencement of the suit there were no allowed claims, and therefore no creditors within the meaning of the law, would amount to conferring upon the mortgagee a possession which can legally be of no benefit to it, because its power of foreclosure and sale, as to creditors, has ceased. Such an anomalous result should be avoided if it can be done without violence to well-settled legal principles. We are of the opinion that it can be avoided, and that no doctrine in the law will be thereby distorted or violated.

If the estate was insolvent, and the property in controversy at the commencement of the suit was required for the payment of debts, the plaintiff was not entitled to possession. The facts show such insolvency, and indeed it is admitted. It matters not that the proof thereof depends upon the allowance of claims subsequently.

Upon the trial, the district court must have found upon the evidence, which is disclosed in the agreed statement, that the mortgage was void as against creditors; that the property of the estate was insufficient to pay its debts; that the estate was insolvent at the commencement of the suit, and the property in question was needed for the payment of the allowed claims. All of these are facts, and conceded facts. They certainly could not sustain a judgment for the mortgagee, awarding to it the possession of the property.

We do not think the position taken by counsel for plaintiffs well taken or supported by authority. Nor do we think that the provisions of Section 2, of Sub-Chapter 16, of the probate act affects this case. That section declares that actions for the recovery of any property or the possession thereof, and all actions founded upon contracts, may be maintained by and against executors and administrators in all cases in which the same might have been maintained by or against their respective testators and intestates. This section was not intended to interfere with the rights of creditors, much less to destroy them. It must be construed in the light of the other provisions of the chapter. One only need be restated; viz., that all the property of the decedent shall be chargeable with the payment of his debts.

For the reasons given, we are of the opinion that there is no error in the record, and the judgment must be affirmed.

*Affirmed.*

CORN, J., and KNIGHT, J., concur.

ON PETITION FOR REHEARING.

POTTER, CHIEF JUSTICE.

Plaintiffs in error apply for a rehearing, and again contend that the presentation and allowance of claims against the estate of the decedent, was a condition precedent to

the right of the administratrix to defend her possession of the mortgaged property. The arguments now made are substantially the same as those originally presented. A careful re-examination of the question has convinced us that the conclusion reached upon the original hearing should be adhered to. As the matter was fully discussed in the former opinion, we do not deem it necessary to again elaborate our views.

A new point is now urged. For the first time in this court it is insisted that the judgment which was for $872.41 should not have exceeded $800, or at the most $840. This point was not raised at the original hearing, and was not mentioned in brief of counsel. Under Rule 14 it was the duty of counsel to include in their brief a statement of all the points relied on. We might well refuse now to consider this point, raised for the first time on petition for rehearing.

In this respect counsel's entire argument is that the value of the property was stipulated to be $800, on September 27, 1897; and if interest is allowed, it should run only from that date. The facts are that the property was delivered to the plaintiff in error bank on March 26, 1897. The agreed statement does not say that the value was $800 on September 27, 1897. It does say "that the foregoing property described herein is of the value of eight hundred dollars." The agreed statement or stipulation as to facts was filed as of the date last above mentioned. It is thus to be observed that the argument is extremely technical. Counsel also say that the judgment ought to have been confined to $800, for the reason that the damages were stipulated at that sum. We do not think that is the effect of the stipulation. The only statement in the stipulation respecting damages is that which is quoted above concerning the value of the property. No reason is assigned or authority cited to show that interest or damages for detention is not properly recoverable by a defendant in replevin when the property has been taken

under the suit and delivered to the plaintiff, nor is any such contention made by counsel.

*Rehearing denied.*

CORN, J., and KNIGHT, J.. concur.